R. Scott Erlewine (SBN 95106)
Kyle P. O'Malley (SBN 330184)
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201
The Presidio
San Francisco, CA  94129
Telephone:  415-398-0900
Fax:          415-398-0911
Email: rse@phillaw.com
        kpo@phillaw.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

RACHID SMAHI, an individual,

Plaintiff,

v.

ST MICROELECTRONICS, INC., a corporation; GIORGIO PEDRAZZINI, an individual; FRANKIE AGIUS, an individual; ISMAIL ALLALCHA, an individual; and DOES 1 through 50, inclusive,

Defendants.

Case No. 5:23-cv-06645-PCP

**FIRST AMENDED COMPLAINT FOR:**

**(1) RETALIATION IN VIOLATION OF LABOR CODE § 1102.5;**
**(2) RETALIATION IN VIOLATION OF FEHA;**
**(3) DISABILITY DISCRIMINATION IN VIOLATION OF FEHA;**
**(4) FAILURE TO REASONABLY ACCOMMODATE DISABILITY AND ENGAGE IN INTERACTIVE PROCESS IN VIOLATION OF FEHA;**
**(5) WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY;**
**(6) HARASSMENT IN VIOLATION OF FEHA;**
**(7) ASSAULT AND BATTERY;**
**(8) FAILURE TO PAY ALL WAGES OWED**

**JURY TRIAL DEMANDED**

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

Plaintiff RACHID SMAHI alleges against STMICROELECTRONICS, INC., GIORGIO PEDRAZZINI, FRANKIE AGIUS, ISMAEL ALLALCHA AND DOES 1 THROUGH 50, AND EACH OF THEM (collectively "DEFENDANTS"), as follows:

## INTRODUCTION

1.      Plaintiff Rachid Smahi brings this action against his former employer (Defendant STMicroelectronics), and three of his California-based former supervisors, to recover damages for retaliation, discrimination and harassment, ultimately resulting in his unlawful termination. Plaintiff also seeks to recover an earned but unpaid bonus.

## THE PARTIES

2.      Plaintiff Rachid Smahi ("Plaintiff") is and at all times relevant was a resident of the State of Oregon.

3.      Defendant STMicroelectronics, Inc. ("ST") is, and at all times relevant was, a corporation organized and existing under the laws of the State of Delaware.  ST, headquartered in Switzerland with US headquarters in Texas, is one of the world's largest semiconductor manufacturers, employing approximately 50,000 personnel worldwide.

4.       Defendant Giorgio Pedrazzini ("Pedrazzini") is, on information and belief, an individual and resident of the State of California.  Pedrazzini is, and at all times relevant was, an officer of ST, to wit, Vice President, Sales & Quality Engineering, Global Key Accounts ("GKA") and employed at ST's Santa Clara, California office.

5.      Defendant Frankie Agius ("Agius") is, on information and belief, an individual and resident of the State of Texas.  On information and belief, Agius at all times relevant was employed by ST as a Director of Quality Engineering, GKA at ST's Santa Clara, California office.

6.      Defendant Ismael Allalcha ("Allalcha") is, on information and belief, an individual and resident of the State of California.  On information and belief, Allalcha is, and at all times relevant was, employed by ST as a GKA Systems Marketing and Quality Engineering, Director at ST's Santa Clara, California office.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone:  (415) 398-0900

7.      The true names or capacities, whether individual, corporate, associate or otherwise of Defendants Does 1 and 50, inclusive, being unknown to Plaintiff prior to filing of this action, Plaintiff asserts his claims against these Defendants under fictitious names pursuant to California Code of Civil Procedure § 474.

8.      Plaintiff is informed and believes that each Defendant named in this Complaint, and each Doe Defendant, individually and/or collectively, is in some manner responsible for the wrongs and damages alleged below, individually and/or, except as specified otherwise herein, as an employer and/or as the agent, servant, partner, joint venturer, alter ego and/or employee of, and/or co-conspirator and/or aider and abettor with, the other Defendants, and each of them, and in doing the actions described below, was acting within the course and scope of his/her/its authority in such capacity, with the permission and consent of the other Defendants, and each of them.  All acts herein alleged were approved of and ratified by the other Defendants, and each of them.

## FACTUAL ALLEGATIONS

### A.      Plaintiff's Hiring

9.      Plaintiff, now age 58, graduated from San Francisco State University with a B.S. degree in electrical engineering.  He has had a successful career in the semiconductor industry for nearly 24 years, working for several major manufacturers.

10.      In or about late October 2021, Plaintiff was hired by ST as a Sr. Principal Customer Quality Engineer for the Santa Clara, California office.  Plaintiff went to the Santa Clara office and interviewed with Giorgio Pedrazzini and Frankie Agius for the position. Plaintiff started work effective December 1, 2021.  Plaintiff reported to Agius, who in turn reported to Pedrazzini.  Pedrazzini's supervisor was Rino Peruzzi (Vice President, GKA, subsequently promoted to President of Americas, GKA and AMS groups), who resides in California and is employed at the Santa Clara office.  Agius, Pedrazzini and Peruzzi at all times relevant were based out of the Santa Clara office.

11.      Plaintiff's offer letter from ST stated that his work location would be Santa Clara, California (2755 Great America Way, 3rd Floor, Santa Clara, CA 95054).  As part of

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

Plaintiff's hiring, ST required that Plaintiff provide a California address for its hiring and payroll records, which he did. Plaintiff's paycheck listed a California address for him, and he paid California state income tax as a California resident.  ST direct deposited Plaintiff's paycheck into Plaintiff's bank account that was opened and located in California.  ST provided Plaintiff with his own dedicated personal cubicle at the ST Santa Clara office.  Plaintiff managed a team of employees who were employed at the Santa Clara office and resided in California. As a further part of Plaintiff's hiring, Agius verbally agreed that Plaintiff, who at all times relevant lived in Portland, Oregon, would be permitted to work remotely from Portland, except on occasion when he physically needed to be in ST's Santa Clara office.  In practice, Plaintiff physically worked at the Santa Clara office nearly every month of his employment for up to a week at a time.

12.     Plaintiff's performance at ST was outstanding. Shortly after being hired, he was promoted to Manager of Field Quality Engineering, and in or about March 2022, he was further promoted to Sr. Manager of Field Quality Engineering in GKA.  Plaintiff was principally responsible for overseeing quality issues reported for all Apple products manufactured by ST. He also managed and provided close guidance/training to a team of two – and ultimately three – field quality engineers, and also served as an ECC Case manager to support ST's China team.

**B.     Hostile Work Environment**

13.     From the outset, Plaintiff's direct manager, Agius, managed by fear, threats and intimidation, resulting in an extremely toxic and hostile work environment for Plaintiff and other employees.

14.     Shortly after Plaintiff was hired and, on information and belief, at the direction and/or with the authority or ratification of Agius' supervisor (Pedrazzini) based out of the Santa Clara office, Agius began a campaign to force Plaintiff to fire two engineers who reported to Plaintiff (Employee # 1 - age 60 + and Employee # 2 - age 50+) and who both resided in California and worked at the Santa Clara office.  Agius told Plaintiff that these employees were old, and that Employee #1 in particular was "too old" to do his job and should retire.  Agius constantly pressured, harassed and intimidated Plaintiff to make up false reasons to reprimand

and then fire both employees.  He also instructed Plaintiff to watch for and document any mistakes, no matter how small, or inconsequential, and to issue written warnings for any issues, either to force Employee #1 to resign or to concoct grounds as cover to unlawfully fire him. Plaintiff objected to Agius that it was illegal to discriminate on the basis of age, and that both employees were experienced professionals who under his guidance were performing satisfactorily.

15.     Undeterred, Agius started using harassing tactics designed illegally to pressure Employees ## 1-2 to resign or to have Plaintiff fire them for discriminatory reasons.  For example, in or about February 2022, Agius demanded that Plaintiff require that both employees physically come into the Santa Clara office (rather than work remotely) during the pandemic, even though doing so was unnecessary for them to perform their jobs and all of the other quality engineers reporting to Agius in other locations continued to be remote.  Agius further directed that Plaintiff take away these employees' business travel privileges for no reason.  When Employees ## 1-2 objected, Agius pressured Plaintiff to fire them.  Plaintiff, however, objected since they were performing their jobs and Plaintiff believed it would be discriminatory to fire them.

16.     When these pressure and harassment tactics didn't work, in or about early April 2022 and in a further effort to force Employee #1 to resign due to his age, Agius demoted Employee #1 for no legitimate reason and without following ST's proper procedures.  On information and belief, the decision was made in the Santa Clara office and was done without Plaintiff's knowledge or input as Employee #1's supervisor – which was itself a violation of ST policy.  When Employee #1 still did not resign, Agius demanded that Plaintiff place Employee #1 on a Performance Improvement Plan, which Plaintiff likewise objected to since it was unjustified and a pretext to set Employee #1 up for a discriminatory termination.  Nevertheless, Agius continued to repeatedly harass Plaintiff to pressure Employee #1 to resign and emphasized that Agius' supervisor in the Santa Clara office (Pedrazzini) was "on board with getting rid of [Employee #1]."  The foregoing placed tremendous pressure on Plaintiff and Employee #1, which resulted in high stress levels on both.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

17.    In May 2022, Employee #1 informed Plaintiff that he was becoming over-stressed due to the constant and relentless pressure by Agius for him to resign.  As a result, on or about June 2, Employee #1 went out on a medical leave of absence for approximately six months.

**C.    Plaintiff's Stress-Related Tachycardia and Heart Attack**

18.    Based on the ongoing and pervasive hostile, harassing and toxic work environment created by Agius and Pedrazzini, which spanned several months, Plaintiff suffered severe stress.  As a result, on or about June 6, 2022, Plaintiff was stricken while responding to Agius' harassing communications, and developed a tachycardia heartbeat (over 200 beats/min) that lasted over several hours.  Plaintiff was immediately transported to the emergency room and put on an induced cardiac arrest, where they restarted his heart.  Plaintiff underwent heart surgery the following day, and several days later was released from the hospital.

19.    Given that Plaintiff's team was already short-handed, Plaintiff felt compelled to return to work barely three days later (on June 13).  Despite knowing that Plaintiff had been out sick, Pedrazzini immediately began pressuring Plaintiff to fly from Portland to the Santa Clara office for a meeting the following day.  Plaintiff advised Pedrazzini that he had undergone unexpected heart surgery and could not even walk.  Shortly after the call, Plaintiff suffered a heart attack.  After a four-day hospital stay, Plaintiff, at the direction of his doctors, took a six-week medical leave of absence from work.

**D.    Plaintiff Is Further Pressured To Terminate Employee #1**

20.    When Plaintiff returned to work from his medical leave in late July 2022 and continuing thereafter, Agius repeatedly demanded that (1) Plaintiff prohibit Employee #1 from returning from his medical leave, (2) force Employee #1 to return his phone and computer, (3) request HR to transfer Employee #1 to a different role in a different department, and (4) terminate Employee #1's employment.  Plaintiff again objected telling Agius that Employee #1 had been performing satisfactorily before he took leave and that it was improper to take action against an employee because of his age.  In retaliation, Agius started excluding Plaintiff from events and communications.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

---

**FIRST AMENDED COMPLAINT**

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

### E.    Agius Assaults Plaintiff

21.    As part of this harassment, in October 2022, Agius physically assaulted and battered Plaintiff on two occasions.  The first occurred in or about early October, while Plaintiff and Agius were at a work conference during normal business hours in Catania, Italy.  Agius, unprovoked and in a hostile and angry manner, began yelling at Plaintiff and intentionally grabbed Plaintiff and began violently shaking him.  The assault was so violent that Plaintiff was in fear that Agius was going to hit him.  The second occurred in or about late October while Plaintiff was sitting at his cubicle at ST's Santa Clara office during normal business hours. Agius approached Plaintiff, and again unprovoked and in a hostile and angry manner, began yelling at Plaintiff and intentionally grabbed and violently shook Plaintiff.  Agius also told Plaintiff during both assaults that he hated him.

### F.    Plaintiff Complains to HR

22.    In or about late October 2022, Plaintiff was contacted by ST's Director of Benefits in HR concerning Employee #1's leave of absence and potential return.  Plaintiff told her that he was being pressured by Pedrazzini and Agius not to permit Employee #1 to return to work, to ask HR to transfer him or to terminate him, and that Plaintiff had objected to doing so. HR confirmed that Employee #1 was entitled to return to work and could not be terminated or have his work assignments changed or take away his equipment, given his disability.  As a result, Plaintiff, with consensus of both HR directors, refused to follow Agius' and Pedrazzini's demands and agreed that he would accept Employee # 1's return without any conditions. Plaintiff then worked with HR on a plan and made arrangements for Employee #1's return from his leave, which Agius and Pedrazzini found out about.

### G.    Retaliation Against Plaintiff

23.    In retaliation for Plaintiff's complaint to HR, his refusal to terminate Employee #1 and his agreement to permit Employee #1 to return to work, the very next day (on November 4) Agius, without justification, and based on information and belief, with approval and ratification from Pedrazzini from the Santa Clara office, placed Plaintiff on a Continuous Individual Feedback for Development plan.  On November 8, Plaintiff responded by email to

---

**FIRST AMENDED COMPLAINT**

7

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

Agius objecting that this action was retaliatory for Plaintiff's agreement to allow Employee #1 to return from medical leave and not terminate or transfer him and objecting to Agius' improper comments about Employee #1 and why Agius wanted him terminated.  Plaintiff copied ST's HR Director on the email and requested a meeting to discuss.

24.      In response, both Pedrazzini and Agius became noticeably upset by Plaintiff's objections and his decision to bring Employee #1 back and not fire or transfer him and to file a complaint with HR.  In retaliation, they excluded Plaintiff from meetings, communications and events, some in California.

25.      In or about mid-November 2022, Plaintiff met with two HR officials and generally described his complaints about Agius' improper pressure and constant harassment. Plaintiff also reported that Agius had repeatedly told him that he wanted to fire Employee #1 because he was "too old."  The HR representative advised Plaintiff that the company would investigate Plaintiff's allegations.

26.      On November 30, Plaintiff wrote HR a further email requesting a follow up meeting to discuss incidents involving Agius' physical and verbal aggression and threats towards Plaintiff plus other issues.

27.      On or about December 7, Plaintiff had a follow up meeting with HR where he complained about Agius' history of verbal and physical abuse and physical assaults on Plaintiff and that Agius was seeking to force Plaintiff out of the company.  Plaintiff advised HR that this conduct was causing him health concerns especially given his heart problems.  Plaintiff also provided supporting documents and identified one of the witnesses.

**H.      Management Retaliates Against Plaintiff For Objecting to Unlawful Conduct**

28.      On or about January 4, 2023, Pedrazzini and ST's HR Director informed Plaintiff that the investigation of his complaints was complete, that actions were taken against Agius, and that Plaintiff would no longer be reporting to Agius (who was being transferred away from GKA) and would instead now be reporting directly to Pedrazzini.  They also told him that further action would be taken against Agius.

---

**FIRST AMENDED COMPLAINT**

8

29.     Shockingly, Pedrazzini then announced to Plaintiff that he [Pedrazzini] was extremely upset with and blamed Plaintiff because: 1) Plaintiff had complained and gotten Agius transferred; 2) Agius' departure had caused many problems for GKA's quality and Pedrazzini was now having to directly manage a department (GKA quality) that he was not familiar with; and 3) Pedrazzini had too many responsibilities related to sales and he did not want to manage the quality group.

30.     As a result, Pedrazzini began further retaliating against and harassing Plaintiff by marginalizing, undermining, and belittling him in an effort to force Plaintiff out of the company. For example, Pedrazzini falsely criticized Plaintiff in meetings in person at the Santa Clara office and remotely.  Pedrazzini also excluded Plaintiff from various meetings and communications in California and elsewhere, including, among others, with ST divisions and with the Apple Council and other high-level meetings on Apple matters, even though Plaintiff was dedicated to the Apple account, had previously attended all such meetings, and was a member of the Organization Reporting team that met with and reported every month to President Peruzzi. By contrast, the other two quality managers in the GKA quality group were included in all meetings and communications. Pedrazzini's decision to exclude Plaintiff from these meetings and communications was made in the Santa Clara office.  Some of this conduct occurred while Plaintiff was present at the Santa Clara office and at other times remotely.

31.     In or about February 2023, Pedrazzini announced that ST's Director of GKA Systems Marketing (Ismail Allalcha) was being assigned in addition to his current role to take over the role Agius had as head of quality engineering and would become Plaintiff's new supervisor.  Thereafter, Pedrazzini and Allalcha, acting together from the Santa Clara office and on information and belief with President Peruzzi's direction, authority and/or complicity, continued retaliating against and harassing Plaintiff in a further to force him out of the company. For example, Pedrazzini and Allalcha undermined Plaintiff while speaking in meetings with colleagues and/or direct reports, made false accusations about him, removed Plaintiff as the point of contact to Apple SQE (engineering representative), stripped Plaintiff of an approved

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

requisition for an additional person to work for Plaintiff and failed to give him a salary raise. Some of this conduct occurred while Plaintiff was present at the Santa Clara office.

32.     Further, in or about the second week of May, ST was experiencing serious shipping problems to Apple because a line was in danger of going down due to a Process Change Notification which still required Apple approval.  Despite Plaintiff intervening and ultimately solving the issue in record time with his technical skills and knowledge, Allalcha falsely accused Plaintiff of having disclosed the line problem to President Peruzzi.

**I.      Plaintiff's Retaliation Complaints Are Ignored**

33.     In or about late April 2023, Plaintiff requested a meeting with a Sr. HR Business Partner (Danielle Snailer) concerning the retaliation.  On or about May 3, Plaintiff met with Snailer and reported that he was being retaliated against by Pedrazzini and Allalcha.  On information and belief, nothing was done to investigate.

34.     Concurrently, Plaintiff also sent an email to ST's President, Rino Peruzzi, requesting a meeting for the specific purpose of discussing the retaliation and harassing behavior he was experiencing so that he could "bring [such conduct] to an end."  Although Peruzzi responded by email that he was out of the country and would keep Plaintiff posted on his schedule back to the Bay Area, Peruzzi made no effort to schedule a Teams call from overseas or even when he was back in town.  Plaintiff never heard back from him.  Further, when at Plaintiff's request Peruzzi's administrative assistant attempted to schedule a time for Plaintiff to meet with him, Peruzzi refused to meet.

**J.      Plaintiff Is Out Sick For A Week Due To Serious Heart Problems**

35.     Due principally to the tremendous stress and anxiety Plaintiff was experiencing from being retaliated against and harassed, he became extremely sick, and was experiencing serious, painful, and debilitating heart palpitations and a rapid beating heart, to the point that he could barely even talk.  During a call on or about May 10, Plaintiff told Snailer in HR about his health issues. She responded that Plaintiff sounded terrible and recommended he take medical leave.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

**FIRST AMENDED COMPLAINT**

36.    As Plaintiff's condition worsened, on or about May 15, Plaintiff sent Allalcha and Jagadish Parande (one of Plaintiff's reports) a text message stating "Hi, not feeling well, will use sick time."  Allalcha acknowledged receipt of the text.  Plaintiff also put a note on the Teams system stating that he was out of the office. Plaintiff understood that this text message was sufficient for him to be out the rest of the week without further notification. When Parande called to check on him, Plaintiff told Parande that he was very sick and will see his doctor for evaluation and to contact him only if it was urgent.

37.    The following day (May 16), Plaintiff was able to visit his doctor, who instructed that he stay home and have no further communications with work the rest of the week due to his serious medical condition.  Later that day, Parande advised Plaintiff that he had told Allalcha that Plaintiff was very sick and might be going to the hospital.

38.    Two days later (May 18), Snailer sent Plaintiff an email stating that she had unsuccessfully tried to call his cell phone, that she had contacted Allalcha who advised that Plaintiff had texted him earlier that week that he was not feeling well and planned to take sick time, and that she hoped everything was ok and to let her know if there was anything she could do for him.  Significantly, Snailer's email mentioned nothing about any requirement that Plaintiff further notify the company of his absence due to sickness nor did she request that he do so.

### K.    Defendant Issue Plaintiff A Retaliatory "Final Warning"

39.    Plaintiff returned to work from his sick leave on May 22.

40.    On May 23, Plaintiff contacted Peruzzi's assistant in a renewed effort to arrange a meeting with Peruzzi to discuss the retaliatory conduct he was experiencing. At her suggestion, the next morning (May 24) Plaintiff sent a follow up email to Peruzzi asking Peruzzi to contact him, pleading that "I really need your help and guidance." But as before, Peruzzi never responded.

41.    Instead, later that same day (May 24), Plaintiff was called into a meeting with Pedrazzini, Allalcha and Snailer, who announced that they intended to give Plaintiff a "final written warning" for supposedly failing to notify his manager of his extended absence due to

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

sickness. Plaintiff was shocked, since he had never previously been "written up," verbally or otherwise.  Plaintiff objected that he had not been in good enough health condition to contact them further while he was out, that he had followed his doctor's advice not to have communications with anyone work related that week and that he understood from his past communications with HR that he only needed to notify his manager once if he intended to be out five days or less which he applied with his direct reports.  On information and belief, Pedrazzini and Allalcha were in California during this meeting.

42.     Ignoring Plaintiff's explanation and that his disability had precluded him from notifying the company, Allalcha, with approval and ratification from Pedrazzini, made the decision that same day to send Plaintiff a document titled "Final Warning," which claimed that Plaintiff had failed to notify a manager of his absence in violation of ST's Attendance Policy and Corrective Action Policy (both attached to his email). Allalcha refused to reconsider the final warning even after Plaintiff provided him with his doctor's note.  On information and belief, Pedrazzini and Allalcha were in California at the time.

**L.      ST Management Further Ignores Plaintiff's Objections**

43.     On May 26, Plaintiff objected to this "final warning," also citing additional grounds that he had never before been provided with nor seen the cited policies and, upon review, these policies provided for a verbal or written warning (not a final warning) to be issued for a first offense. He also provided ST with a copy of his doctor's note verifying his medical condition and need for time off work.  On May 30, Plaintiff again objected that he was being retaliated against.

44.     In further retaliation, on or about May 29, Pedrazzini and Allalcha, from the Santa Clara office, stripped Plaintiff of his GKA-restricted secure cubicle at the Santa Clara office.

45.     On May 31, Plaintiff had a telephone call with Snailer, again reporting that he was being retaliated against (especially by Pedrazzini), that it was causing him great stress, and that all he wanted was for the retaliation to stop so that he could reduce his stress in order to do his job.  Despite being on notice of his condition from his doctor's note the week before and her

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

communications with Plaintiff, and instead of investigating the underlying retaliation and harassment, however, Snailer responded that Plaintiff's relationship with the company was not "salvageable."  She further said that if it was her, she would not want to stay if the job was causing her so much stress that the marginalization was compromising her health, such as a heart attack.  Snailer ended the call by stating that she would follow up with Pedrazzini.

46.     On June 2, Snailer met with Plaintiff and announced that Plaintiff's relationship with the company was "irreparable" and proposed that the company would offer "a package" with money for him to resign.  Plaintiff proposed as one option to reduce his stress level transferring to another department (Tesla division), which had major quality problems for which he was qualified and which the Tesla department VP of quality had expressed interest in having Plaintiff join him on a trip to ST's Tesla manufacturing in Morocco where Plaintiff immigrated from. Snailer, under the direction and ratification of Pedrazzini and Allalcha from the Santa Clara office, ignored Plaintiff's reasonable accommodation request and focused solely on unlawfully terminating Plaintiff's employment with ST instead.

**M.     STM Further Retaliates By Requiring that Plaintiff Come Into The Office Full Time For The Next Year**

47.     Later on June 2 and in further retaliation, Allalcha and Snailer announced that, because Plaintiff had been given a Final Warning, he was "ineligible" for the Hybrid Work Arrangement under the Hybrid Work Policy and effective June 7 would be required to be physically in the Santa Clara office full time (instead of remotely working from his home in Portland as he had done since the start of his employment as had been agreed to).  Allalcha indicated that plaintiff would not be permitted to work remotely for at least another year, since the policy stated that an employee would only be eligible for remote work if he had had no disciplinary action in the last 12 months.

48.     Management's harassing and retaliatory decision to force Plaintiff to be physically in the office five days per week was made in the Santa Clara and designed to force Plaintiff to resign.  First, Pedrazzini, Allalcha and Snailer all knew that Plaintiff lived in Portland and had been advised that Plaintiff's former supervisor (Agius) had agreed, as a condition to hiring, that Plaintiff would be entitled to work remotely from Portland.  Second, on

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

information and belief, they also knew that it would be cost prohibitive for Plaintiff to work five days a week in Santa Clara, and unlike Peruzzi, Pedrazzini, Agius and others, the company did not pay for Plaintiff's travel and lodging while in Santa Clara.  Third, the purported Hybrid Work Arrangement did not say that an employee with a corrective action was automatically disqualified from remote work, but only that it would be determined on a case-by-case basis. As such, it was discretionary and, absent the retaliation, would not have been imposed on Plaintiff. Fourth, Plaintiff and his team typically dealt mostly with Europe and sometimes China time zones, so it made little practical sense for them to be physically in the office.  Fifth, there was minimal in person interactions with the SQE Apple team even on the limited occasions when Plaintiff was in the office. Indeed, Plaintiff's department was performing quite well, as evidenced by outstanding scores they had received from Apple.

49.     On June 5, Plaintiff sent an email to HR further protesting the continuing retaliatory actions. Plaintiff again emphasized that the relentless retaliation against him had created a hostile work environment and substantial stress which was seriously impacting his health and resulted in Plaintiff taking off the week of May 15 as sick time.

50.     On June 13, Allalcha sent Plaintiff an email, copying Pedrazzini and Snailer, claiming that Plaintiff had violated the corrective action because there was no indication that Plaintiff had physically been in the office the previous day. Plaintiff responded that "this matter had been discussed also with HR in detail and I will continue to work based on hybrid model previously agreed to."

**N.     Plaintiff's Termination**

51.     Two weeks later, on June 29, Snailer and Allalcha called Plaintiff into a meeting and gave him an ultimatum in the form of two options: he could either accept a "separation package" they were offering him in exchange for a release or else he would be fired effective the following day.  On information and belief, Allalcha was in California at the time of the meeting. When Plaintiff rejected the separation package, Snailer asked him what number he wanted to take to management.  When Plaintiff stated that he wanted to keep his job, ST terminated his employment effective the following day.  On information and belief, Peruzzi, Pedrazzini and

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone:  (415) 398-0900

Allalcha, from the Santa Clara office, made the decision to terminate Plaintiff, or at a minimum ratified the decision.

### O.   The Unpaid Bonus

52.   At the time of his termination, Plaintiff was a participant in ST's Management by Objectives bonus plan, which provided for bonuses based on each semi-annual financial result for ST.  The Plan provided that an employee who was employed on the date that the designated incentive period ended shall have earned and be entitled to receive a payment under the Plan or where otherwise required by law.  Because ST terminated Plaintiff effective the last day of the January 1 – June 30, 2023 incentive period, Plaintiff was entitled to be paid his bonus for this period, which on information and belief would generally be paid within 30 days after close of the incentive period.  ST, however, failed to pay Plaintiff this bonus, despite the fact that in the termination meeting Snailer told Plaintiff that he would be paid the bonus.

### P.   Defendants' Location

53.   The conduct of Agius, Pedrazzini, Allalcha and Peruzzi described above occurred in person in the Santa Clara office or remotely while Peruzzi, Pedrazzini Agius, Allalcha were based out of ST's Santa Clara office.

### Q.   Administrative Filing

54.   Subsequent to his termination, Plaintiff timely filed with the California Civil Rights Department ("CRD") a complaint charging Defendants with discrimination, retaliation, harassment, failure to reasonably accommodate disability and failure to engage in the interactive process in violation of the California Fair Employment and Housing Act (Govt Code § 12940 et. seq – FEHA).  The CRD has issued to Plaintiff a right to sue letter.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Whistleblower Retaliation—Cal. Lab. Code § 1102.5

### (Against Defendants STMicroelectronics, Inc. and Does 1-50)

55.   Plaintiff re-alleges and incorporates by this reference the allegations in paragraphs 1-54 as though fully set forth herein.

56.     California Labor Code § 1102.5 prohibits, among other things, an employer, or any person acting on behalf of the employer, from retaliating against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has the authority to investigate, discover, or correct the violation or noncompliance, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute or a violation of or noncompliance with a state or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

57.     As set forth above in paragraphs 20-50, Plaintiff disclosed one or more violations of law or state rules or regulations by Defendants ST and Does 1-50, and each of them, including disclosures that 1) Plaintiff's supervisor (Agius) had assaulted and battered Plaintiff in violation of Cal. Penal Code §§ 240 and 242; 2) Pedrazzini and Agius were demanding that Plaintiff fire or transfer Employee #1 or not permit him to return to work from medical leave, or were themselves seeking to do so, based on the employee's age (over 40) and disability in violation of FEHA; 3) Pedrazzini and Allalcha were retaliating against Plaintiff in violation of FEHA and Labor Code § 1102.5; and 4) Pedrazzini, Allalcha and Agius were harassing Plaintiff for advocating on behalf of or associating with Employee #1 in opposing discriminatory behavior (as to Pedrazzini and Agius) and/or for objecting to their retaliatory conduct in violation of FEHA.

58.     Plaintiff made one, some or all of these disclosures to Peruzzi, Pedrazzini, Agius and members of ST's HR department, and each of them, respectively, each of whom had authority over Plaintiff and/or had the authority to investigate, discover, or correct the violations.

59.     Defendants ST and Does 1-50, and each of them, believed that Plaintiff had disclosed or might disclose same, to a government or law enforcement agency, a person with authority over Plaintiff, or to an employee with authority to investigate, discover, or correct legal violations or noncompliance.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

60. As set forth above, Plaintiff also refused to participate in unlawful activity, including directives that Plaintiff terminate or transfer or not permit to return from medical leave one or more employees based on the employee's age (40 and over) and/or disability in violation of FEHA.

61. Plaintiff had reasonable cause to believe that the information disclosed a violation of state law, rule or regulation and/or that his participation in the unlawful activity set forth above would result in a violation of law, rule or regulation.

62. On information and belief, in retaliation for Plaintiff's protected disclosures and/or refusals to obey unlawful and improper orders, said Defendants took the above-alleged adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff, giving him a final written warning, stripping him of responsibilities and personnel, excluding him from events, meetings and communications, stripping him of his GKA-restricted secure office, placing him on a Continuous Individual Feedback for Development plan and attempting to force him to resign.

63. Plaintiff's protected disclosures and/or refusals to obey unlawful and improper orders, and each of them, were at the very least a contributing factor in said Defendants' decisions to take the foregoing adverse employment actions against Plaintiff.

64. As a result of the actions of Defendants ST and Does 1-50, and each of them, Plaintiff has suffered and continues to suffer damages and injury in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this court, including but not limited to:

a. losses of wages and benefits, past and future, lost promotions, loss of earning capacity, reputational harm and other economic losses; and

b. personal physical injury, physical sickness, emotional distress, depression, anxiety, humiliation, embarrassment, mental anguish, pain and suffering, and other non-economic damages.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

65.     The actions of said Defendants, and each of them, were malicious, oppressive and fraudulent, and Plaintiff is entitled to recover punitive damages against said Defendants, and each of them, pursuant to Cal. Civil Code § 3294.

**SECOND CAUSE OF ACTION**

**Retaliation in Violation of FEHA**

**(Against Defendants STMicroelectronics, Inc.  and Does 1-50)**

66.     Plaintiff re-alleges and incorporates by this reference the allegations in paragraphs 1-54 as though fully set forth herein.

67.      FEHA (Govt. Code §§ 12940 et seq., 12940(h)) prohibits an employer from retaliating against an employee for engaging in protected activity, including the reporting of violations of FEHA or refusal to participate in activities that violate FEHA.

68.     As set forth in paragraphs 20 - 50 above, Plaintiff reported and objected to Defendants' violations of FEHA and to Defendants' demands that Plaintiff engage in activities prohibited by FEHA.

69.     On information and belief, Plaintiff's reports and objections were a substantial motivating factor for Defendants ST and Does 1-50, and each of them, to take the above-alleged adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff and the other actions alleged in paragraph 61 above.

70.     As a result of the actions of said Defendants, Plaintiff has suffered and continues to suffer damages and injury in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this court, including but not limited to:

a.     losses of wages and benefits, past and future, lost promotions, loss of earning capacity, reputational harm and other economic losses; and

b.     personal physical injury, physical sickness, emotional distress, depression, anxiety, humiliation, embarrassment, mental anguish, pain and suffering, and other non-economic damages.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

71.     The actions of Defendants ST and Does 1-50, and each of them, were malicious, oppressive and fraudulent, and Plaintiff is entitled to recover punitive damages against said defendants, and each of them, pursuant to Cal. Civil Code § 3294.

### THIRD CAUSE OF ACTION

**Disability Discrimination in Violation of FEHA**

**(Against Defendants STMicroelectronics, Inc.   and Does 1-50)**

72.     Plaintiff re-alleges and incorporates by this reference the allegations in paragraphs 1-54 as though fully set forth herein.

73.     FEHA (Govt. Code §§ 12920, 12940 et seq.) prohibits discrimination against individuals who have a "disability," whether mental or physical.  Stress-related heart palpitations, heart attacks, panic attacks and anxiety qualify as a disability under FEHA. Cal. Govt. Code §12940; 12926.1(b-d); 2 CCR §11065(d)(1-2).

74.     As more fully set forth in paragraphs 16-49, Plaintiff was disabled and/or was perceived by Defendants ST and Does 1-50, and each of them, as disabled under FEHA and was entitled to FEHA's protections. Said Defendants were aware that Plaintiff suffered a stress-related heart attack in mid-2022 and went out on medical leave for six weeks, that Plaintiff was suffering substantial disabling stress from his supervisors' unlawful conduct, and that in mid-May 2023, Plaintiff was out sick for a week due to very painful and debilitating stress-related heart palpitations, which precluded, and/or made it exceedingly difficult, for him to communicate with his employer during his absence and had been prohibited from doing so by his doctor.  Plaintiff further notified said defendants on multiple occasions that their actions were causing him a debilitating condition.

75.     Said Defendants were aware of Plaintiff's disability and/or perceived him as disabled.

76.     On information and belief, Plaintiff's disability and/or perceived disability was a substantial motivating factor for said Defendants to take the adverse employment actions against plaintiff alleged in this complaint, including but not limited to discharging Plaintiff and the other actions alleged in paragraph 61 above.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

77.     As a result of the actions of said Defendants, and each of them, Plaintiff has suffered and continues to suffer damages and injury in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this court, including but not limited to:

a.     losses of wages and benefits, past and future, lost promotions, loss of earning capacity, reputational harm and other economic losses; and

b.     personal physical injury, physical sickness, emotional distress, depression, anxiety, humiliation, embarrassment, mental anguish, pain and suffering, and other non-economic damages.

78.     The actions of said Defendants, and each of them, were malicious, oppressive and fraudulent, and Plaintiff is entitled to recover punitive damages against said defendants, and each of them, pursuant to Cal. Civil Code § 3294.

## FOURTH CAUSE OF ACTION

### Failure to Reasonably Accommodate Disability and Failure to Engage in Interactive Process in Violation of FEHA

### (Against Defendants STMicroelectronics, Inc. and Does 1-50)

79.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1-54 as though fully set forth herein.

80.     An employer is required by FEHA to provide reasonable accommodation to a disabled employee and/or an employee perceived to be disabled to enable him to perform his job.  (Cal. Govt. Code §12940(m).  An employer is also required to engage in an interactive process with the employee to determine a reasonable accommodation.  This obligation applies where the employee's disability is known or apparent to the employer.  (Cal. Govt. Code §§ 12926(1)(e); 12940(n).)

81.     As alleged in paragraphs 16 - 49 above, Plaintiff was disabled and/or was perceived by Defendants ST and DOES 1-50, and each of them, as disabled under FEHA and was entitled to FEHA's protections.

82.     As alleged above, Plaintiff repeatedly advised management that his heart problems were due to the stressful environment at work due to the retaliatory and harassing

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

behavior being directed at him. Defendants' response that the relationship was "unsalvageable" and "irreparable," and their ultimatum that he either accept a separation package to resign or be terminated constituted a violation of the obligation to engage in good faith in the interactive process and to reasonably accommodate Plaintiff's disability.

83.     Plaintiff also communicated with said Defendants in 2022 and 2023 that he was stressed-out and was suffering heart palpitations due to his managers' hostile, harassing and retaliatory conduct, that it was interfering with his job and that he wanted this behavior to stop. Plaintiff proposed, as one potential option to reduce his stress level, that he be transferred to an open position on the Tesla team, for which he was well qualified and had been invited by the Tesla department head to join. Said Defendants failed to reasonably accommodate his request or engage in the interactive process to determine whether this or any other reasonable accommodations were available.

84.     On information and belief, said Defendants' failure and refusal to reasonably accommodate Plaintiff's disability and/or to engage in the interactive process was a substantial motivating factor in taking adverse employment actions against plaintiff, including but not limited to discharging Plaintiff and the other actions alleged in paragraph 61 above.

85.      As a result of the actions of said Defendants, and each of them, Plaintiff has suffered and continues to suffer damages and injury in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this court, including but not limited to:

a.     losses of wages and benefits, past and future, lost promotions, loss of earning capacity, reputational harm and other economic losses; and

b.     personal physical injury, physical sickness, emotional distress, depression, anxiety, humiliation, embarrassment, mental anguish, pain and suffering, and other non-economic damages.

86.     The actions of Defendants ST and Does 1-50, and each of them, were malicious, oppressive and fraudulent, and Plaintiff is entitled to recover punitive damages against said defendants, and each of them, pursuant to Cal. Civil Code § 3294.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

## FIFTH CAUSE OF ACTION

### Harassment In Violation of FEHA

### (Against All Defendants)

87.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1-54 as though fully set forth herein.

88.     FEHA makes it unlawful for any person to harass an employee based on his association with or advocacy on behalf of protected employees. See, e.g., *Thompson v. City of Monrovia* (2010) 186 Cal. App. 4th 860, 876–79; *Davis v. Davidson Hotel Co., LLC*, No. CV126327CASAJWX, 2013 WL 12136582, at *2–4 (C.D. Cal. June 17, 2013).

89.     Plaintiff was employed by Defendants ST and Does 1-50, and was subjected to harassing conduct by his supervisors, including Defendants Pedrazzini, Agius and Allalcha, because he advocated on behalf of, or was associated with, Employees # 1 and/or #2 who were protected under FEHA on the basis of (age 40 or over as to both employees) and as to disability (Employee #1) and he refused to fire and/or transfer one or both of them.  This harassing conduct included but was not limited to, physically assaulting Plaintiff, giving Plaintiff a final written warning, stripping him of responsibilities and personnel, marginalizing, undermining, and belittling him, making false accusations about him, excluding him from events, meetings and communications, stripping him of his GKA-restricted secure office, placing him on a Continuous Individual Feedback for Development plan and attempting to force him to resign.

90.     Agius' harassment of Plaintiff generally occurred when both were present at the Santa Clara office, or while Plaintiff was present at the Santa Clara office or remotely while Agius was based out of the Santa Clara office.  The harassing conduct of Plaintiff by Pedrazzini and/or Allalcha generally occurred when Plaintiff and either Pedrazzini and/or Allalcha were present in the Santa Clara office, or while Plaintiff worked remotely and Pedrazzini and Allalcha were either present in the Santa Clara office and/or were based out of the Santa Clara office.

91.     The harassing conduct was severe (including but not limited to the physical assault(s)) and/or pervasive.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

92.     A reasonable person would have considered the work environment to be hostile, intimidating, offensive, oppressive, abusive and unwelcome.

93.     Plaintiff considered the work environment to be hostile, intimidating, offensive, oppressive, abusive and unwelcome.

94.     The actions of Defendants ST, Pedrazzini, Agius, Allalcha and Does 1-50, and each of them, were a substantial motivating factor in causing Plaintiff's harm.

95.     As a result of the actions of said Defendants actions, Plaintiff has suffered and continues to suffer damages and injury in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this court, including but not limited to:

a.     losses of wages and benefits, past and future, lost promotions, loss of earning capacity, reputational harm and other economic losses; and

b.     personal physical injury, physical sickness, emotional distress, depression, anxiety, humiliation, embarrassment, mental anguish, pain and suffering, and other non-economic damages.

96.     The actions of Defendants, and each of them, were malicious, oppressive and fraudulent, and Plaintiff is entitled to recover punitive damages against said defendants, and each of them, pursuant to Cal. Civil Code § 3294.

## SIXTH CAUSE OF ACTION

### Wrongful Discharge In Violation of Public Policy

### (Against Defendants STMicroelectronics, Inc. and Does 1-50)

97.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1-54 as though fully set forth herein.

98.     Discharging an employee for discriminatory and/or retaliatory reasons in violation of FHEA constitutes a violation of California public policy.

99.     Defendants ST and Does 1-50, and each of them, discharged Plaintiff in violation of such policies.

100.     As a result of the actions of said Defendants, and each of them, Plaintiff has suffered and continues to suffer damages and injury in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this court, including but not limited to:

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900

a.      losses of wages and benefits, past and future, lost promotions, loss of earning capacity, reputational harm and other economic losses; and

101.    personal physical injury, physical sickness, emotional distress, depression, anxiety, humiliation, embarrassment, mental anguish, pain and suffering, and other non-economic damages.

102.    The actions of Defendants ST and Does 1-50, and each of them, were malicious, oppressive and fraudulent, and Plaintiff is entitled to recover punitive damages against said defendants, and each of them, pursuant to Cal. Civil Code § 3294.

## SEVENTH CAUSE OF ACTION

### Assault and Battery

### (Against Defendants STMicroelectronics, Inc., Agius and Does 1-50)

103.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 54 as though fully set forth herein.

104.    As more fully alleged in paragraph 21 herein, in or about October 2022, Defendant Agius, while acting as an employee of Defendants ST and Does 1-50, and each of them, on two occasions physically assaulted and battered Plaintiff by yelling at and violently shaking him with the intent to harm or offend him.  On the first occasion, Agius, by his conduct, also threatened to physically strike Plaintiff.

105.    Plaintiff did not consent to the conduct of Defendants ST, Agius, and Does 1-50, and each of them, and it reasonably appeared to Plaintiff that Agius intended to strike him.

106.    Plaintiff was harmed and offended by said Defendants' conduct.

107.    A reasonable person in Plaintiff's situation would have been offended by such conduct.

108.    On information and belief, Defendant ST was at the time of the assaults aware that Agius had a history of angry and erratic behavior towards employees he managed, and it was foreseeable that he could physically assault employees.  For instance, Plaintiff was in a vehicle with Agius and Pedrazzini one time when Plaintiff witnessed Agius violently and repeatedly hit the vehicle's dashboard while Agius and Pedrazzini were arguing.  On

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone:  (415) 398-0900

information and belief, Peruzzi was also aware of Agius' temper, which was often out of control.

109.    As a result of the actions of Defendants ST, Agius, and Does 1-50, and each of them, Plaintiff has suffered and continues to suffer damages and injury in amounts not yet fully ascertained, but in excess of the jurisdictional minimum of this court, including but not limited to:

a.    losses of wages and benefits, past and future, lost promotions, loss of earning capacity, reputational harm and other economic losses; and

b.    personal physical injury, physical sickness, emotional distress, depression, anxiety, humiliation, embarrassment, mental anguish, pain and suffering, and other non-economic damages.

110.    The actions of Defendants ST, Agius and Does 1-50, and each of them, were malicious, oppressive and fraudulent, and Plaintiff is entitled to recover punitive damages against said defendants, and each of them, pursuant to Cal. Civil Code § 3294.

## EIGHTH CAUSE OF ACTION

### Failure to Timely Pay Wages

### (Against Defendants STMicroelectronics, Inc. and Does 1-50)

111.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1-54 as though fully set forth herein.

112.    As more fully alleged in paragraphs 53-54 above, as of the date of his termination (June 30, 2023), Plaintiff had earned and was entitled to be paid his bonus under ST's sales compensation incentive plan estimated to total approximately $17,000 for the period January 1, 2023 to June 30, 2023.

113.    California Labor Code § 204 provides, in pertinent part, as follows: "All wages . . . earned by any person in any employment are due and payable twice during each calendar month. . ."

114.    Defendants ST, and Does 1-50, violated Section 204 by failing to pay this bonus to Plaintiff during the pay period it was earned or at all.

1

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in his favor and relief against Defendants, and each of them, as follows as appropriate for the above causes of action:

(a)     For compensatory damages in an amount to be determined at trial;

(b)     For punitive and exemplary damages;

(c)     For pre- and post-judgment interest, at the legal rate;

(d)     For attorneys' fees and costs, including but not limited to fees and costs pursuant to Cal. Lab. Code § 1102.5(j), Govt Code § 10940 and Labor Code §218.5;

(e)     For costs of suit herein incurred; and

(f)     For all such other and further relief this Court deems just, proper, and equitable.

Dated:  February 29, 2024                    PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


By /s/ R. Scott Erlwine
   R. Scott Erlewine
   Kyle P. O'Malley
   Attorneys for Plaintiff


## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated:  February 29, 2024                    PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


By /s/ R. Scott Erlwine
   R. Scott Erlewine
   Kyle P. O'Malley
   Attorneys for Plaintiff

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
Telephone: (415) 398-0900