UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHID SMAHI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STMICROELECTRONICS, INC., et al.,<br><br>　　　　　Defendants. | Case No. 23-cv-06645-PCP<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS, GRANTING DEFENDANT'S MOTION TO STRIKE, AND GRANTING IN PART DEFENDANT'S SEALING MOTIONS**<br><br>Re: Dkt. Nos. 53, 54, 61, 65, 67 |

Defendant and counterclaimant STMicroelectronics, Inc. ("ST") moves for case terminating sanctions against plaintiff Rachid Smahi. For the reasons discussed herein, ST's motion is denied without prejudice. ST's related motion to strike and sealing motions are granted in part.

**BACKGROUND**

Smahi was employed by ST from October 2021 until late June 2023. During that time, Smahi alleges he was harassed and retaliated against at work for objecting to unlawful conduct and faced discrimination due to his disability. He also alleges that he was physically assaulted and verbally abused. Smahi filed this employment discrimination lawsuit against ST on December 22, 2023, in Santa Clara County Superior Court. ST removed it to this Court on December 28, 2023. Smahi's operative second amended complaint contains 14 causes of action under state and federal law for retaliation, disability discrimination, failure to reasonably accommodate disability, harassment, assault and battery, and failure to pay all wages owed

On July 11, 2024, Smahi produced responsive documents that allegedly revealed to ST that Smahi possessed communications about highly confidential trade secret ST client projects, as well

as internal ST company documents regarding the same projects. On November 1, 2024, allegedly because of this discovery, ST amended its answer to add additional counterclaims related to the alleged trade secrets violations. *See* Dkt. No. 52.

## I. ST's version of events

On August 16, 2024, ST demanded that Smahi submit his devices and accounts for a forensic examination "to evaluate the scope of his improper retention of ST confidential and proprietary documents, as well as whether Plaintiff has transmitted such documents to other third parties aside from counsel." Smahi subsequently agreed to permit this examination, and it was scheduled for and take place on October 1–3, 2024. During the investigation, the forensic investigators discovered that Smahi had tampered with his data and devices. According to ST, the investigation revealed that:[1]

- Smahi had restored his iPhone on September 30, 2024, erasing its information and settings, and he may have deleted backup data prior to September 30, 2024;
- Smahi wiped his computer on September 30, 2024, by resetting it to factory settings, such that all prior data was lost;
- Smahi deleted an undisclosed iCloud account associated with his Yahoo email address on September 24, 2024 (the same day that Smahi's counsel finally agreed to the scope of forensic examination);
- Smahi recovered a password on September 30, 2024, for an undisclosed Gmail account and then deleted the account;
- Smahi had another Hotmail email account associated with his iPhone that was not disclosed and, because it had not been previously disclosed, the investigators did not have its password and could not review the account.

Lastly, the USB drive that Smahi had used to transmit the alleged trade secret documents to his attorneys was "accidentally" dropped into a pool in July 2024. Smahi subsequently

---

[1] As discussed below, Smahi has submitted a declaration that disputes many of these facts or their characterizations.

hammered the USB stick to pieces and threw the pieces away.

**II.     Smahi's version of events**

Smahi acknowledges that he "realized that he needed to preserve and present evidence of his unlawful treatment at ST" when he prepared the USB drive containing documents (the "retained documents") related to this litigation. He asserts that the USB drive accidentally fell into the swimming pool and as a result was discarded by Smahi prior to any discussion of imaging devices, and while Smahi was unaware of any obligation he may have had to retain the device.

Smahi likewise argues he had no duty to preserve the "iMac information" which he contends was wiped in late June or July 2024 for Smahi to prepare his computer for sale and "had nothing to do with this case and, at the time of deletion, … contained none of the [retained documents] or any information related to them."

Smahi explains that ST's counsel first reached out on August 8, 2024 to express concern about the retained documents. He further alleges that ST told Smahi he need not wait "before destroying the documents in his possession, custody, or control" on August 16, 2024, and that ST expressly requested, on August 21, 2024, that he "delete any/all confidential/proprietary ST or third-party documents in his custody, possession or control," prompting several of Smahi's email deletions. Smahi further contends that on August 30, 2024, he agreed to the forensic examination of his cell phone, his iMac, and his iCloud and email accounts because he understood its purpose was to verify that he no longer had possession of the retained documents. Smahi says he had "nothing to hide" because he had deleted the documents already. "He did not understand that ST's counsel and [forensic investigator] wanted to access all of his personal email accounts and those of his family, since those accounts had no connection to this case or to ST in any way."

Smahi contends that the late September deletions were in response to an alert he got that someone had attempted to log into his account and that he worried he was being hacked.[2]

---

[2] ST points out that, despite meet-and-confers with counsel about the issue, they did not hear this explanation until Smahi filed his opposition to ST's motion for sanctions. Further, ST submits proof that Smahi admitted to trying to log into his own account around that time, so the purportedly concerning login could have been his own.

3

**LEGAL STANDARDS**

Federal Rule of Civil Procedure 37(e) applies to discovery issues arise regarding spoliation of electronically stored information, which is all that is at issue on ST's motion. *See Gregory v. Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024).[3]

A party engages in sanctionable misconduct triggering Rule 37(e) when it (1) "fail[s] to take reasonable steps to preserve" electronically stored information that (2) "should have been preserved in anticipation or conduct of litigation," and (3) when such information "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Once a court is satisfied that a party has engaged in such misconduct, it conducts a two-tiered analysis to determine the appropriate sanction. The most severe sanctions—adverse inferences and terminating sanctions—are available only if the court finds "that the party acted with the intent to deprive another party of the [lost] information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "[T]he intent required by Rule 37(e)(2) 'is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party.'" *Gregory*, 118 F.4th at 1080. Lesser sanctions are available if the court "find[s] prejudice to another party from loss of the information," and those sanctions must be "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

"The Ninth Circuit has not set forth a specific standard of proof, but district courts in this Circuit apply a preponderance of the evidence standard in making findings to determine whether to impose spoliation sanctions under Rule 37(e)." *Morehead v. City of Oxnard*, No. CV 2:21-cv-07689-SPG-ADSX, 2023 WL 8143973, at *4 (C.D. Cal. Oct. 4, 2023) (collecting cases).

**ANALYSIS**

**I.     ST's request for sanctions is denied without prejudice.**

ST seeks sanctions in the form of (1) a directed verdict on ST's counterclaims, (2) judgment against Smahi on each of Smahi's claims; (3) monetary sanctions.

---

[3] At the hearing, ST acknowledged that Rule 37(e) "precludes [the] court from resorting to [its] inherent authority" to impose sanctions in this case. *Gregory*, 118 F.4th at 1079.

4

Based on the factual record before it, the Court is unable to conclude by a preponderance of the evidence that sanctions are warranted.[4] There are material conflicts of fact regarding whether Smahi had any duty to preserve the electronically stored information given ST's supposed requests to Smahi to delete the retained documents and Smahi's claimed belief that all of the documents at issue with respect to ST's counterclaim had already been provided to his attorneys for production to ST's counsel. There are also material conflicts of fact about whether the electronically stored information was lost because Smahi failed to take reasonable steps to preserve it in light of the hacking that Smahi purportedly experienced. Likewise, the Court is unable to determine whether Smahi possessed the requisite intent required by Rule 37(e)(2) to impose terminating sanctions because this requires a credibility determination that the Court is unable to make on the record before it. In order for the Court to determine whether sanctions are warranted, further factual development, such as a deposition of Smahi by ST, is necessary, and the Court will likely require an evidentiary hearing including testimony from Smahi. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 956 (9th Cir. 2006*)* (noting that deposition of the purported spoiler and an evidentiary hearing took place before the district court decided the motion).

Accordingly, the Court denies ST's motion without prejudice to its resubmission following further factual development. The Court notes, however, that even if ST meets the requirements for sanctions under Rule 37(e), "the fact that Rule[ ] 37(e) authorizes sanctions does not mean that

---

[4] The Court grants ST's motion to strike Smahi's separately filed evidentiary objections because they do not comply with Civil Local Rule 7–3(a), which requires such objections to be incorporated into the party's brief. The Court notes, however, that Smahi also raised the crux of those objections in his opposition brief, such that they are therefore properly before the Court. *See PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 1677521, at *2 n.4 (N.D. Cal. Apr. 25, 2014). Smahi argues that ST's motion is inappropriately based on inadmissible evidence including (1) the declaration of ST's litigation counsel, who Smahi argues lacks personal knowledge and expertise; and (2) the forensic investigation report, which Smahi argues is hearsay not accompanied with a declaration. Whether or not these documents would be admissible on their own for the purposes of the current motion, ST attached properly admissible evidence to its reply, including (1) a revised declaration of ST's litigation counsel asserting personal knowledge and including email attachments; and (2) a declaration by the forensic investigator. The Court exercises its discretion to allow this evidence because it is consistent with the evidence presented in ST's original motion. *See Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1249 (N.D. Cal. 2018) (citing *Edgen Murray Corp. v. Vortex Marine Constr., Inc.*, 2018 WL 4203801, at *3 (N.D. Cal. June 27, 2018)). The Court rejects Smahi's arguments as to why this evidence is otherwise purportedly inadmissible.

5

sanctions must be imposed. The Court retains discretion to determine what sanctions, if any, are warranted." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 353 (D. Ariz. 2022). The committee notes to Rule 37(e) expressly note that the "[t]he remedy should fit the wrong, and the severe measures authorized by [Rule 37(e)(2)] should not be used when the information lost was relatively unimportant." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment. Applying this principle, the Court is skeptical that terminating sanctions with respect to Smahi's affirmative claims would be appropriate even if ST ultimately proves spoilation.[5]

## II.     ST's motions to seal are granted in part and denied in part.

ST asks the Court to seal various documents submitted in support of its motion and Smahi's opposition to its motion.

The public has a longstanding and well-recognized "right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Public access bolsters "understanding of the judicial process" and "confidence in the administration of justice," and it provides a "measure of accountability" for courts. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). There is thus a "strong presumption in favor of access" to court records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

To overcome this strong presumption, a party who wishes to seal a court record must generally "articulate compelling reasons supported by specific factual findings ... that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (cleaned up). Sealing may be justified when "court files ... become a vehicle for improper purposes, such as ... to gratify private spite, promote public scandal, circulate libelous statements,

---

[5] Contrary to ST's arguments, the facts in *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 956 (9th Cir. 2006), are distinguishable from those here. In *Leon*, the Ninth Circuit affirmed as not an abuse of discretion the district court's issuance of case terminating sanctions against an employee who spoliated evidence by wiping 2,200 files off his company computer, some of which the employee admitted included pornography downloaded to the company computer in contravention of corporate policy. *Id.* at 959. This evidence bore directly upon the affirmative claims in *Leon*. Though ST argues that the destroyed evidence in this case might have related to Smahi's residency, medical condition, and efforts to mitigate damages, the relationship of the alleged spoilation to Smahi's affirmative claims is tangential at best and not as relevant as the evidence deleted directly off the company computer at issue in *Leon*.

or release trade secrets." *Id.* at 1179. But without more, the "fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation" does not merit sealing. *Id.* "Under this stringent standard," the Court must "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." Auto Safety, 809 F.3d at 1096–99. Civil Local Rule 79-5(c)(1) and (f)(3) requires the party seeking to seal to provide "a specific statement" of the reasons for doing so, explaining the interests that warrant sealing and the injury that will otherwise result.

The Court finds compelling reasons for and grants ST's sealing requests at Dkt. Nos. 53 and 65. The Court grants in part ST's sealing request at Dkt. No. 61 as to the proposed Exhibit B Erlewine declaration redactions but denies the rest of its request because ST does not offer compelling reasons to seal public documents, Smahi's discussion of public documents, and other nonconfidential items. Within 14 days, the parties shall file on the public docket each of the documents previously filed under seal with only those redactions permitted by this Order.

**IT IS SO ORDERED.**

Dated: March 31, 2025

P. Casey Pitts
United States District Judge