UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RACHID SMAHI,

        Plaintiff,

    v.

STMICROELECTRONICS, INC., et al.,

        Defendants.

Case No. 5:23-cv-06645-PCP

**ORDER SANCTIONING PLAINTIFF**

Re: Dkt. No. 100

Defendant and counterclaimant STMicroelectronics, Inc. ("ST") moves for sanctions against plaintiff Rachid Smahi. For the reasons discussed herein, ST's motion is granted.

**BACKGROUND**

Smahi was employed by ST from October 2021 until late June 2023. During that time, Smahi alleges that he was harassed and faced retaliation for objecting to unlawful conduct and was subjected to discrimination due to his disability. He also alleges that he was physically assaulted and verbally abused. Smahi filed this employment discrimination lawsuit against ST on December 22, 2023, in Santa Clara County Superior Court. ST removed it to this Court on December 28, 2023. Smahi's operative second amended complaint contains 14 causes of action under state and federal law for retaliation, disability discrimination, failure to reasonably accommodate disability, harassment, assault and battery, and failure to pay all wages owed.

On July 11, 2024, Smahi produced responsive documents that allegedly revealed to ST that Smahi possessed communications about highly confidential trade secret ST client projects, as well as internal ST company documents regarding the same projects. On November 1, 2024, allegedly because of this discovery, ST amended its answer to include counterclaims related to the alleged trade secrets violations. Twenty days later, ST filed a motion seeking sanctions against Smahi,

arguing that he had spoliated evidence during discovery. The Court denied that motion without prejudice. *Smahi v. STMicroelectronics, Inc.*, 789 F. Supp. 3d 690, 694 (N.D. Cal. 2025). Nearly a year later, after deposing Smahi, ST filed a renewed motion for sanctions.

**LEGAL STANDARDS**

Federal Rule of Civil Procedure 37(e) applies to discovery issues arise regarding spoliation of electronically stored information, which is all that is at issue on ST's motion. *See Gregory v. Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024). A party engages in sanctionable misconduct triggering Rule 37(e) when it (1) "fail[s] to take reasonable steps to preserve" electronically stored information that (2) "should have been preserved in anticipation or conduct of litigation," and (3) when such information "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Once a court is satisfied that a party has engaged in such misconduct, it conducts a two-tiered analysis to determine the appropriate sanction. The most severe sanctions—adverse inferences and terminating sanctions—are available only if the court finds "that the party acted with the intent to deprive another party of the [lost] information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Lesser sanctions are available if the court "find[s] prejudice to another party from loss of the information," and those sanctions must be "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

"The Ninth Circuit has not set forth a specific standard of proof, but district courts in this Circuit apply a preponderance of the evidence standard in making findings to determine whether to impose spoliation sanctions under Rule 37(e)." *Morehead v. City of Oxnard*, No. CV 2:21-cv-07689-SPG-ADSX, 2023 WL 8143973, at *4 (C.D. Cal. Oct. 4, 2023) (collecting cases).

**ANALYSIS**

Smahi's alleged spoliation can be split into two categories: the destruction of a USB drive allegedly containing documents, files, and emails downloaded from his work computer; and the destruction of several of his devices and accounts shortly before a forensic investigation.

**I.    USB Drive**

Days after Smahi was terminated, he connected a USB drive to his work laptop to download emails and attachments that he purportedly thought may be "related to [his] unlawful

United States District Court
Northern District of California

treatment while employed at ST." He then shipped his work laptop back to ST but retained the USB. Once he retained counsel, he allegedly sent all of the documents on the USB drive to his lawyer and then deleted the files. He kept the USB for personal use. Over a year later, in July 2024, Smahi accidentally dropped the USB in his mother's swimming pool in Morocco. He then retrieved the USB, smashed it with a hammer, and threw the pieces in the garbage. Smahi alleges that he did so out of "an abundance of caution."

There are two tranches of evidence that the USB could be linked to. The first is evidence relevant to Smahi's affirmative claims. The second is evidence relevant to ST's counterclaims. Neither form of evidence warrants a finding of sanctionable conduct.

### A.    Smahi's affirmative claims

There is no question that Smahi had a duty to preserve the USB. He knew the documents and whatever device contained them were directly relevant to his employment discrimination suit, as that was the original reason he had the USB. But ST's arguments for why it was prejudiced by that spoliation repeat the same reasoning that it employed in its first motion for sanctions: The USB might contain documents relating to Smahi's residency, medical condition, employment search, and more. As the Court previously noted, "The relationship of the alleged spoilation to Smahi's affirmative claims is tangential at best." *Smahi*, 789 F. Supp. 3d at 695 n.5. Because ST has not demonstrated prejudice resulting from the loss of any evidence on the USB drive relating to Smahi's affirmative claims, no sanctions are warranted on that basis.

### B.    ST's counterclaims

ST next argues that because the USB contained files that allegedly held trade secrets, Smahi should have known that it would be relevant to anticipated litigation, even though it did not file its trade secrets counterclaim until November 2024. Without the metadata provided by the USB, ST purportedly cannot be sure that Smahi actually did what he said with the documents.

If a party has "some notice that the documents were potentially relevant to the litigation," then they also have a duty to preserve those documents. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). The duty can arise before a case has even been filed. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006). "Although the Ninth Circuit has not precisely

defined when the duty to preserve is triggered, trial courts in this Circuit generally agree that as soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Brower v. Target Corp.*, No. 3:24-CV-05524-TLF, 2025 WL 3628637, at \*2 (W.D. Wash. Dec. 15, 2025) (citation omitted) (collecting cases). Some courts have found a duty to preserve if a "sophisticated party" received a preservation letter shortly after an incident. *See, e.g.*, *Hunt v. Assa Abloy Entrance Sys. US, Inc.*, No. 2:24-CV-01980-GMN-EJY, 2025 WL 2484182, at \*5 (D. Nev. Aug. 28, 2025). Others have found no duty when a party lacked notice of the evidence's potential relevance and destroyed the documents during the normal course of business. *See, e.g.*, *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001–02 (9th Cir. 2002).

Smahi's actions fall somewhere in between. He deliberately destroyed evidence in an incident that could not be described as the normal course of business by anyone. And while ST had yet to file its counterclaims at the time of the destruction, many of the documents and emails downloaded from Smahi's work laptop warned that the information contained within was confidential. Still, "[a] general concern over litigation does not trigger a duty to preserve evidence." *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. 2009). Because the destruction of the USB drive occurred several months before ST filed its counterclaims against Smahi, Smahi lacked notice that the USB drive would be relevant to those claims. He thus did not have a duty to preserve that evidence for those claims, and cannot be sanctioned for the loss of evidence relating to those claims.

## II.    iMac, iPhone, and email accounts

On August 16, 2024, ST sent Smahi a letter informing him that they were aware that he retained confidential documents and requested forensic imaging of his devices and email addresses so it could "evaluate the scope of his improper retention." While Smahi ultimately did provide his devices and accounts for such an examination, some of them had been significantly altered. He restored his iPhone, deleted an iCloud account associated with a Yahoo! email address, deleted an undisclosed Gmail account, and on September 30—the night before the agreed-upon forensic examination—wiped his iMac.

United States District Court
Northern District of California

A litigant represented by lawyers who receives a preservation letter should know not to destroy possible evidence identified by that letter. *See Hunt*, 2025 WL 2484182, at \*5. Smahi was clearly on notice that his devices and online accounts could be subject to litigation. He had a duty to preserve the evidence, and he violated it.

ST argues that without the destroyed evidence it is unable to look at the metadata on the devices to better understand if the documents had been shared with competitors. It is also unable to examine the accounts to see if they had been used to share those documents. While ST lacks proof that any of the devices or accounts definitively contained evidence of trade secret violations, Smahi's violated duty—coupled with the fact that the lost evidence could have helped ST prove an essential element of its claim—is enough to support a finding of prejudice. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) ("In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it.") (citation omitted).

ST seeks terminating sanctions, which are more severe than other sanctions and thus more difficult to prove. Terminating sanctions require a Court to find that a party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Intent "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). ST points to Smahi's deposition and errata as purportedly demonstrating shifting explanations and proof of bad faith, and requests that the Court make an inference of intent on that basis. Smahi, on the other hand, testified that he was not aware that the evidence was relevant and that his reasons for destruction were entirely unrelated to the litigation.

"When necessary, the district court may hold an evidentiary hearing on a motion for sanctions." *Lambright v. Ryan*, 698 F.3d 808, 825–26 (9th Cir. 2012) (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983)). Because determining whether Smahi intended to destroy the evidence turns on the credibility of Smahi's testimony, the Court will hold an evidentiary hearing at which Smahi must testify as to his reasons for destroying this evidence. The hearing will occur on Tuesday, May 5th, at 10:00 A.M. in Courtroom 8 of the Robert F.

United States District Court
Northern District of California

Peckham Federal Courthouse in San Jose. After that hearing, the Court will determine what sanctions are appropriate for Smahi's spoliation of the iMac, iPhone, and email accounts.

**IT IS SO ORDERED.**

Dated: March 26, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

6