UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHID SMAHI,<br>Plaintiff,<br>v.<br>STMICROELECTRONICS, INC., et al.,<br>Defendants. | Case No. 5:23-cv-06645-PCP<br><br>**ORDER GRANTING SUMMARY JUDGMENT IN PART AND ISSUING SANCTIONS**<br><br>Re: Dkt. Nos. 146, 162, 163 |

Plaintiff Rachid Smahi filed the instant employment discrimination and retaliation action against defendants ST Microelectronics, Giorgio Pedrazzini, Ismail Allalcha, Frankie Agius, and Does 1 through 50. Smahi was employed by ST from October 2021 until late June 2023. During that time, Smahi alleges that he was subjected to discrimination due to his disability and was harassed and retaliated against for objecting to unlawful conduct. He also alleges that he was physically assaulted and verbally abused. Smahi's operative second amended complaint contains 14 causes of action under state and federal law for retaliation, disability discrimination, failure to reasonably accommodate disability, harassment, assault and battery, and failure to pay all wages owed. Defendants ST, Pedrazzini, and Allalcha move for summary judgement on all fourteen claims.[1] Defendant Agius separately moves for partial summary judgment on the harassment and assault and battery claims.

During discovery related to the proceeding, Smahi produced responsive documents that allegedly revealed to ST that Smahi possessed communications about highly confidential ST client projects, as well as internal ST company documents regarding the same projects. ST amended its

[1] Smahi concedes his unpaid wages claim. Therefore, summary judgment is granted as to Count VIII.

United States District Court
Northern District of California

answer to include counterclaims related to these alleged trade secrets violations, then filed a motion seeking sanctions against Smahi, arguing that he had spoliated evidence. After the Court denied that motion without prejudice, *Smahi v. STMicroelectronics, Inc.*, 789 F. Supp. 3d 690, 694 (N.D. Cal. 2025), ST filed a renewed motion for sanctions. The Court granted that motion and held an evidentiary hearing to determine whether Smahi had the requisite intent for either terminating or adverse sanctions.

For the following reasons, the Court grants the motions for summary judgment in part and impose adverse inference sanctions on Smahi.

**BACKGROUND**

In October 2021, Smahi was hired by ST as a Principal Customer Quality Engineer, a position based out of ST's office in Santa Clara, California.[2] Like many employees hired during the COVID-19 pandemic, Smahi began his new job at ST working remotely. At the time, he lived in Portland, Oregon. In November 2022, as the effects of the pandemic waned, ST announced that it was requiring employees to return to work. In its announcement, ST allowed for exceptions for those who submitted hybrid work requests to their managers and received approval. Smahi submitted a hybrid work request that was not approved. In response to his request, Agius—Smahi's manager at the time—informed him that management recommended that employees spend at least two days a week in the office.

The previous year marked a difficult period for Smahi and ST. After joining ST, Smahi began supervising two Santa Clara-based employees. Smahi claims that "[a]lmost immediately" after being hired, Agius began pressuring him to fire his two direct reports for being too old. When Smahi refused, his relationship with Agius dissolved. Smahi claims that Agius "constantly harassed [him] by [] yelling (and on occasion screaming) at [him], threatening to cut [him] out of meetings and work communications if [he] didn't follow [Agius's] unlawful instructions, criticizing [Smahi's] work for made up reasons, calling [him] 'habibi' in a mocking and derogatory way on a couple of occasions, undermining [his] relationship with other departments

[2] The following facts are drawn from the parties' submissions and the record evidence and are undisputed unless otherwise noted.

United States District Court
Northern District of California

and soliciting negative feedback about [him].” Smahi claims that Agius behavior caused him “severe stress.” He claims that as a result of the stress, he had a heart attack in June 2022.[3]

Smahi took six weeks of medical leave, from mid-June to early August. Smahi claims that, after his return, Agius continued harassing him, “excluding [him] from events (including a top-level management meeting with Apple in October), communications and management meetings, unfairly complaining to [Smahi’s] boss (Mr. Pedrazzini) and HR about [him], soliciting disparaging feedback about [him], and yelling at [him] and criticizing [his] work for no reason.” Smahi claims that the bullying culminated in October 2022 when Agius allegedly physically assaulted him twice. The first occasion occurred during a work conference in Italy when, “in an unprovoked and in a hostile and angry manner,” Agius “began yelling at [Smahi],” grabbed him, and violently shook him. The second occasion occurred later that month in Santa Clara, when Agius approach Smahi at his cubicle and in the same manner yelled at Smahi, grabbed him, and violently shook him. Smahi claims that during both incidents, Agius told Smahi that he hated him. Both parties agree that the incidents lasted for a very short time, less than a minute each. Beyond that, Agius largely disputes Smahi’s characterization of the events.

On November 1, 2022, ST informed all employees of its return-to-work policy. On November 8, Smahi complained to ST’s human resources department that Agius was pressuring him to discriminate against one of his direct reports based on age. On November 16, Smahi submitted a hybrid work request form to Agius, proposing to come into the Santa Clara office at most three days a month. On November 21, Agius responded to the request, informing Smahi that management recommended “at least 2 days a week in the office” and asking Smahi to re-submit his form. On November 29, Smahi replied, writing, “I think we will need to have a discussion as a team about this. For me it will create a hardship as I can’t afford to live in the bayarea certainly with my low salary and compensation.”

Meanwhile, following an investigation into Smahi’s complaint, ST transferred Agius to

---

[3] The parties dispute whether Smahi suffered one or two heart attacks. This dispute is immaterial so it need not be resolved to decide the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

United States District Court
Northern District of California

another department. The transfer removed Agius from supervising or otherwise interacting with Smahi. Smahi's title and salary were unaffected. Pedrazzini temporarily took over Agius's duties, including managing Smahi.

Smahi claims that Pedrazzini complained that Agius's transfer "caused many problems" and blamed Smahi for those problems. Smahi claims that Pedrazzini then began "bad-mouth[ing]" Smahi in front of other employees, including Smahi's direct reports. Smahi claims that Pedrazzini excluded him from meetings and group chats with his peers. Smahi claims that this behavior continued even after Pedrazzini stepped aside, as he "enlisted" Allalcha—Smahi's new supervisor—to help perpetuate the retaliation.[4]

On April 28, 2023, Pedrazzini sent a message to Smahi's team stating that, "beginning next week," all of them were expected to work from the office at least three days per week. On May 1, Smahi emailed the president of ST, complaining that he was being retaliated against by his mangers. The president then forwarded that email to HR staff.

On May 10, 2023, Smahi began suffering heart palpitations. On May 15, Smahi sent a message to Allalcha and a team member reading, "Hi, not feeling well, will use sick time." From May 15 through May 19, Smahi did not report to work. On May 19, Danielle Snailer, an HR representative, emailed Smahi stating he had not reported any additional sick days since Monday, and that it was his responsibility to communicate with his manager if he was sick. She also requested that Smahi reach out to his manager "as soon as possible and please reply to this email advising us of your current status." Smahi informed his manager on Monday, May 22, that he was feeling better and back to work. On return, no one spoke with Smahi about his absence or why he had failed to call in.

On May 23, 2023, Allalcha emailed the team stating that, to "offer additional flexibility," the team would only be required to come in two days per week as a "trial for the coming three months." The new policy was set to begin on May 29. On May 24, Allalcha emailed a document to Smahi, informing him that he had received a Final Warning regarding his absence the previous

[4] Defendants dispute Smahi's characterization of these incidents.

week. The Final Warning rendered Smahi ineligible for hybrid work under ST policy and thus require him to work in-person five days a week. Smahi failed to meet either the hybrid or in-person policies. Between April 28 and June 29, he reported to the Santa Clara office only three times, on June 7, 8, and 9. Smahi was terminated on June 29, 2023. ST stated that the reason for his termination was his failure to comply with the in-person work policy.

Smahi alleges the following fourteen claims: (1) retaliation in violation of California Labor Code § 1102.5; (2) retaliation in violation of California's Fair Employment and Housing Act ("FEHA"); (3) disability discrimination in violation of FEHA; (4) failure to reasonably accommodate and engage in the interactive process in violation of FEHA; (5) harassment in violation of FEHA ; (6) wrongful discharge in violation of public policy; (7) assault and battery; (8) failure to pay all wages owed; (9) retaliation in violation of Oregon Revised Statute 659A.199; (10) disability discrimination in violation of Oregon Revised Statute 659A.112; (11) harassment in violation of Oregon law; (12) retaliation in violation of the Americans with Disability Act ("ADA") and the Americans with Disabilities Act ("ADEA"); (13) disability discrimination in violation of the ADA; and (14) harassment in violation of the ADA and the ADEA.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party may submit affidavits to support a Rule 56 motion for summary judgment. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587.



United States District Court
Northern District of California

## ANALYSIS

### I. ST Defendants' Motion for Summary Judgment

The ST defendants (ST, Pedrazzini, and Allalcha) move for summary judgment on all fourteen of Smahi's claims. The Court grants defendants' motion as to the disability discrimination, failure to accommodate, interactive process, and harassment claims and otherwise denies the motion.

#### A. Disability Discrimination Claims (Counts III, VI, X, XIII)

Smahi claims that ST unlawfully terminated his employment due to his disability. In Smahi's view, ST terminated him for his May 2023 absence, and the Final Warning issued following his return was a mere pretext used by ST to provide a justification for his eventual termination. According to Smahi, ST issued the warning with knowledge both that it would render him ineligible for any hybrid work arrangement and that Smahi would not be willing or able to work in the Santa Clara office five days per week.

ST counters that Smahi's disability discrimination claims fail because there is no evidence he has a qualifying disability, there is no evidence ST knew about the alleged disability, and there is no evidence of a causal connection between any adverse employment action and any alleged disability. Because Smahi cannot show that he has either a qualifying disability or that ST knew about any alleged disability, he cannot succeed on his claims.[5]

A disability is a physical condition that limits a major life activity.[6] Smahi contends that his "[s]tress-related heart palpitations, heart attacks, panic attacks, and anxiety attacks" all qualify as disabilities. Defendants counter that Smahi's heart condition was "a short sickness [requiring temporary leave], not a disability." For support, they point to the fact that his medical record is

---

[5] Because Smahi's discrimination claims cannot succeed without either evidence of a qualifying disability or that ST knew about the disability, the Court declines to address ST's argument that Smahi fails to show a causal connection between his disability and his termination.

[6] The state statutes and federal law all share substantially similar definitions of disability. *See* Cal. Gov't Code § 12926 (a disability is a physical condition that "[l]imits a major life activity; 42 U.S.C.A. § 12132 (a disability is a physical condition that "substantially limits" a major life activity); ORS 659A.104 (a disability is a physical condition that "substantially limits" a "major life activity").

devoid of any ongoing health issues that might lend support to a finding of disability.

Contrary to defendants' suggestion, there is no requirement that a plaintiff's medical records provide evidence of the plaintiff's disability. To the contrary, "[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations." *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) (considering disability in a social security benefits appeal). But defendants are correct that Smahi's medical record does not *support* a finding of a qualifying disability.

Smahi took three absences from work over the course of a year. First, he took six weeks off in June 2022 after suffering a heart attack and receiving surgery.[7] Next, he took less than a week off in December 2022 because of "severe heart palpitations." He took a third, week-long leave in May 2023 for another heart episode. In between the medical events, Smahi told Agius "about his medical issues and how his doctors [ ] recommend[] [that he] decrease his stress [which can be] detrimental to his condition and further aggravate [it]." During that same conversation, he informed Agius that due to his condition, he could not work from the ST office that week. Agius then emailed multiple HR representatives and Pedrazzini informing them of those conditions. Later, in that same thread, the ST managers referred to "ADA concerns" surrounding Smahi.

While temporary hospitalization and subsequent recovery may have disrupted Smahi's ability to work during those particular weeks, there is no evidence to support a finding that they continued to limit his overall ability to work. *Cf. Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal. App. 5th 570, 588 (2016) (noting that "[r]epeated or extended absences from work *may* constitute a limitation on the major life activity of working" and finding a factual issue as to whether plaintiff was disabled where plaintiff's tumor caused her to miss work on nine separate occasions within a single year and was likely to result in further disruptions in the future) (emphasis added). Smahi was never barred from taking sick leave, he was allowed to take time off for each absence, and he did not suggest that his heart condition was likely to result in future absences. On returning

[7] On his return, Smahi told a third-party vendor that he was "not disabled." Smahi later clarified that he said that because he "understood disability to refer to being in a wheelchair," which he was not.

to work, Smahi informed his manager that he needed to "decrease his stress," but Smahi does not explain how this need to lower his stress affected his ability to perform his assigned tasks or would result in a future inability to work. *See Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1180 (11th Cir. 2019) (noting that while a heart attack may cause a lasting physical impairment, a plaintiff must show that those impairments limit a major life activity in order to have a qualifying disability).[8] Tellingly, Smahi never informed ST or others that his heart condition required any changes to his work schedule or otherwise impaired his ability to do his job. Instead, at all times, his stated desire was to work remotely from Oregon instead of moving to the Bay Area and to work with managers who did not increase his stress level. Accordingly, the evidence would not support a finding that Smahi's heart condition imposed substantial limitations on his overall ability to work.

For related reasons, the evidence would not support a finding that ST had knowledge of Smahi's purported disability. A plaintiff alleging disability discrimination must show that the employer was aware of the disability. *Dow v. Lowe's Home Improvement, Inc.*, No. C05-3077 MMC, 2006 WL 3507935, at *6 (N.D. Cal. Dec. 5, 2006); *Oregon Occupational Safety & Health Div. v. CC & L Roofing Co.*, 273 P.3d 178, 181 (Or. Ct. App. 2012). This does not require the employee to specifically use the word "disability" or any other legal term that might trigger notice that a disability discrimination statute applies. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000), *vacated on other grounds by US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002); *Soria*, 5 Cal. App. 5th at 593. Nonetheless, where the plaintiff did not provide clear notification of the disability to the employer or request accommodations on the basis of that disability, "knowledge of disability is only 'imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts.'" *Raygoza v. Walmart, Inc.*, No. CV 21-809-GW-KSX, 2022 WL 22879564, at *11 (C.D. Cal. Feb. 8, 2022) (citing *Avila v. Cont'l Airlines, Inc.*,

---

[8] Smahi provides additional evidence that on May 16, 2023, a doctor advised him to take a short break from work "to recover, to not be so stressed … and then go back to work, whether with his current employer or someone else. But long-term … it would be to find a different position, work environment, whatever that may be." This advice to temporarily rest and eventually consider switching roles does not suggest that Smahi or his doctor believed that his heart conditions required the imposition of any immediate restrictions on his work.

United States District Court
Northern District of California

165 Cal. App. 4th 1237, 1248 (2008), *as modified on denial of reh'g* (Aug. 28, 2008)). "'Vague or conclusory statements revealing an unspecified incapacity' are insufficient." *Id.*

Smahi argues that defendants were on notice because he disclosed his medical condition to his managers and HR, one of whom expressed "ADA concerns" when discussing plans to change Smahi from a manager to a single contributor after his return from his 2022 medical leave. Defendants counter that Smahi never told ST that he was disabled.[9]

It is not enough for a plaintiff to merely inform a defendant that he was out sick in order to put it on notice of a disability, even if he was hospitalized. *See Avila*, 165 Cal. App. 4th at 1249 (finding that defendant was not on notice that plaintiff suffered from a qualifying disability even though it was aware that he was unable to work because he was hospitalized for an unspecified condition). The *Avila* court noted that the plaintiff returned to work "without restrictions or accommodations," such that the defendant could fairly conclude that the plaintiff did not suffer from a qualifying disability. *Id.* Smahi's conversation with Agius, where he informed his manager that he needed to "decrease his stress," was too vague for ST to have understood that ST's heart condition was a lingering disability rather than a short-term illness. Indeed, whenever Smahi raised the issue of stress, it was generally in relation to his relationship with his supervisors rather than his health. For example, Smahi avers that his December 2022 absence was because of his conflict with Agius, stating:

> On December 20, I spoke with Mr. Pedrazzini and told him that I was undergoing so much stress from Mr. Agius's on-going harassment that I was having severe heart palpitations and needed to take the rest of the week off to address it. He told me that he did not want to hear about my heart palpitations, but agreed to the time off.

Smahi's reporting of heart palpitations purportedly caused by workplace bullying did not put ST on notice of any qualifying disability. And while Smahi notes ST's August 2022 reference to

[9] Defendants also argue that because Smahi told them, "I am not disabled," he cannot show a genuine dispute of material fact as to whether ST knew about his disability. But Smahi never told ST that he was not disabled. Instead, he said it to a third-party vendor. ST fails to show that it was privy to Smahi's statement to the vendor. It therefore cannot use this statement to address its burden to show knowledge.

"ADA concerns," that comment was nonspecific and did not suggest that ST knew that Smahi's heart condition was one that substantially limited his ability to work nine months later. If anything, it may simply indicate that ST was proactive about avoiding ADA violations.

Because there is no genuine dispute of material fact as to either whether Smahi was disabled or whether ST was aware of any possible disability, Smahi cannot succeed on his disability discrimination claims. The Court therefore grants defendants' motion to dismiss these claims.[10]

**B. Retaliation Claims (Counts I, II, VI, IX, XII)**

In addition to contending that he was terminated on the basis of his disability, Smahi contends that his termination constituted unlawful retaliation for his prior complaints about his manager's treatment of at least one employee, whom Smahi claims was discriminated against on the basis of age and disability. In Smahi's view, ST issued the Final Warning as a pretext to justify his termination and did so because of continuing hostility related to his complaints.

Smahi's retaliation claims are subject to the three-part burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 792 (1973). Under that test:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination [or retaliation]. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext.

*Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981) (citing and quoting *McDonnell Douglas*, 411 U.S. at 802, 804). The test provides plaintiffs with means to prove intentional discrimination or retaliation through circumstantial evidence. *Hall v. Google LLC*, No. 23-CV-06574-JST, 2026 WL 1951628, at *8 (N.D. Cal. July 6, 2026) (citing *Texas Dep't of Cmty.*

[10] Because Smahi's failure to accommodate and interactive process claims (Counts IV and XIII) also require a qualifying disability, the Court grants defendants' motion as to those claims. *See Nigreo v. Sears, Roebuck & Co.*, 784 F.3d 495, 498 (9th Cir. 2015); Cal. Gov't Code § 12940(n).

*Affs.*, 450 U.S. at 354).

To establish his prima facie case, Smahi must show (1) that he engaged in protected activity, (2) that he suffered an adverse employment decision, and (3) that there was a causal link between that activity and the adverse action. *Id.*

There is no dispute that Smahi suffered an adverse employment decision—his termination. The evidence also would support a finding that Smahi engaged in protected activity. Smahi brings his retaliation claims under the ADEA, the ADA, ORS 659A.199, Cal. Lab. Code § 1102.5, and FEHA.[11] With the exception of Sections 659A.199 and 1102.5, Smahi's retaliation claims must be linked to underlying violations of a protected characteristic or activity.[12] Smahi's complaints about Agius's discriminatory conduct constituted protected activity under all of the statutes he invokes. Smahi complained to HR that Agius told him to fire a direct report based on his age, and ST investigated another separate incident in which Smahi emailed HR to allege that Agius had discriminated against an employee returning from a medical leave of absence. As a result of the investigation, ST issued a corrective action warning based on Agius's "discriminatory and retaliatory conduct."

Where an adverse employment action occurred soon after the plaintiff engaged in protected activity, that temporal proximity alone may be sufficient to establish causation for the purposes of plaintiff's prima facie case. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In

---

[11] A prima facie case of retaliation under the state statutes is subject to the same standard. *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017); *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378 (2005), *disapproved of on other grounds by Lawson v. PPG Architectural Finishes, Inc.*, 503 P.3d 659 (Cal. 2022); *Akers v. Cnty. of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002). And while *Trent* considered retaliation in a Title VII context, courts have extended Title VII principles to retaliation claims brought under the ADA and the ADEA. *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003); *Barnes v. Hershey Co.*, No. 3:12-CV-01334-CRB, 2016 WL 192590, at *4 (N.D. Cal. Jan. 15, 2016).

[12] *See* 42 U.S.C. § 12203(a) (barring retaliation against any individual because said individual has opposed any act or practice made unlawful by the ADA); 29 U.S.C. § 623(d) (barring retaliation against any individual because said individual has opposed age discrimination made unlawful by the ADEA); *Dinslage v. City & County of San Francisco*, 5 Cal. App. 5th 368, 382–83 (2016) (to be Protected under FEHA's retaliation statute, an employee's actions must oppose activity the employee reasonably believes constitutes unlawful discrimination). Both ORS 659A.199 and Cal. Lab. Code § 1102.5 are broader and merely require an underlying violation of a statute, rule, or regulation.

this case, however, Smahi's initial complaints about Agius were made nearly nine months before his termination, and Agius's transfer occurred seven months before Smahi was terminated.

Smahi argues that the temporal gap does not defeat his showing of causation because ST exhibited a "pattern of antagonism following the protected conduct." *Porter v. California Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005). In particular, Smahi has provided evidence that would support a jury to conclude that after Agius was transferred, "Pedrazzini immediately (and Allalcha one month later) began retaliating and harassing" him. Smahi attests that "Mr. Pedrazzini [ ] told me that he was extremely upset with me because I had complained and gotten Mr. Agius transferred," and that "Mr. Pedrazzini told me that Mr. Agius's transfer had caused many problems for him and the quality department." He likewise has provided evidence that he faced further retaliation after he complained about Pedrazzini and Allalcha's actions in May 2023.

Given the competent evidence that Smahi faced a continuing pattern of antagonism arising from his complaints about Agius, a jury could conclude those complaints were the cause of his subsequent termination notwithstanding the gap in time between the complaints and his firing. Accordingly, Smahi has provided evidence sufficient to establish a prima facie case of retaliation.

If a plaintiff demonstrates a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Texas Dep't of Cmty. Affs.*, 450 U.S. at 252–53 (discrimination); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003) (retaliation). ST maintains that Smahi was terminated for his failure to obey its in-office work policy. It is undisputed that Smahi requested to work remotely in November 2022, and that his manager, Agius, denied that request. It is also undisputed that, after the denial, Smahi continued to work remotely until he was terminated in June.

Because ST has articulated a legitimate, nondiscriminatory reason for Smahi's termination, Smahi can avoid summary judgment only by providing evidence from which a jury could conclude that ST's reason is pretextual. A plaintiff can provide circumstantial evidence to support their argument, and although that evidence must be "specific and substantial," this requirement is "hardly an onerous one." *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015); *see also id.* ("We have repeatedly held that it should not take much for a

plaintiff in a discrimination case to overcome a summary judgment motion.”).

Smahi satisfies this evidentiary burden. There is no doubt that by June 2023, ST wanted Smahi gone. For example, on June 7, shortly after enacting the in-office policy, Smahi’s managers were so dismayed that he showed up in person that that one of them exclaimed, “We’re dead screwed. He will not give up.” Smahi also provides evidence suggesting that ST’s leave policy may have been inconsistently applied, and that he had informed Allalcha that he would be absent before his May 2023 no-call/no-show incident. There is also no genuine dispute of material fact that Smahi complained about Agius’s age discrimination, and Smahi has provided evidence that Pedrazzini was angry about Smahi’s complaints and the eventual transfer of Agius and that Allalcha also began retaliating against Smahi at Pedrazzini’s behest. He also provides evidence that Pedrazzini, Allalcha, and various HR staff were all involved in discussions surrounding Smahi’s final written warning and eventual termination.

To be certain, other evidence cuts against Smahi. He argues that, while he was out on his six-week medical leave in the summer of 2022, ST employees “hatched a plan to demote” him from manager to individual contributor. But the record shows that Agius scheduled a meeting to deliver a corrective action *before* Smahi went on medical leave. The record also shows that Pedrazzini consulted with legal and HR and determined that delivering the corrective action so soon after Smahi’s return from medical leave would appear retaliatory. In another email chain with Agius, Pedrazzini, and HR staff about the planned corrective action, a participant raised “ADA concerns.” This is not the smoking gun that Smahi thinks. Instead, it suggests that ST was motivated to terminate Smahi for other reasons but may have refrained from doing so because it was concerned about ending up in a lawsuit.

Still, it is not the role of the Court to weigh the evidence and determine the truth of the matter at summary judgment. *Anderson*, 477 U.S. at 249. Instead, the Court’s sole role is to determine whether there is a genuine issue for trial. *Id.*; *see also Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019) (“In reviewing motions for summary judgment in the employment discrimination context, a court must zealously guard an employee’s right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the

evidence and an opportunity to evaluate the credibility of the witnesses.") (citation omitted). Smahi's circumstantial evidence would permit a jury to conclude that ST's articulated reason for terminating him was pretextual and that his termination was instead motivated by his prior complaints. Accordingly, the Court denies summary judgment as to Smahi's retaliation claims.

**C. Harassment Claims (Counts V, XIV, XI)**

Smahi brings his harassment claims against the ST defendants under ORS 659A, FEHA, and the ADA and ADEA. But Smahi's opposition briefing references only FEHA. Because Smahi does not respond to the ST defendants' arguments about the Oregon or federal statutes, he has abandoned those claims. *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.3 (9th Cir. 2005). Smahi's remaining claim is that he was harassed by Agius for opposing FEHA-protected conduct, and by Allalcha and Pedrazzini in retaliation for reporting Agius and eventually leading to his manager's transfer. Both the ST defendants and Agius move for summary judgment on the ground that Smahi does not show membership in a protected class.[13]

"To establish a prima facie case of a racially hostile work environment [under FEHA], [the plaintiff is] required to show that (1) he was a member of a protected class; (2) he was subjected to unwelcome [ ] harassment; (3) the harassment was based on [membership in a protected class]; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the [employer] is liable for the harassment." *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 876 (2010).

Smahi's FEHA harassment claim is based of his alleged advocacy on behalf of his direct reports, who were members of protected classes based on age and disability. While an employee who advocates on behalf of someone in a protected class is protected under FEHA, *see Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 477 (1992), *reh'g denied and opinion modified* (Mar. 5,

---

[13] Defendants also argue that Smahi never shows that the harassment was severe or pervasive. The Court need not reach the argument, but it notes that the issue of whether the harassment was severe is "rarely appropriate for disposition on summary judgment." Cal. Gov't Code § 12923; *see also Mofrad v. United Parcel Serv., Inc.*, No. 23-CV-01899-AMO, 2025 WL 2308492, at *5 (N.D. Cal. Aug. 11, 2025), *modified,* No. 23-CV-01899-AMO, 2025 WL 2374111 (N.D. Cal. Aug. 15, 2025).

1992) (holding that plaintiff was is entitled to FEHA protection for opposing unlawful harassment of another employee), those claims are generally brought under FEHA's anti-retaliation provision, *Fitzsimons v. California Emergency Physicians Med. Grp.*, 205 Cal. App. 4th 1423, 1429 (2012) ("The harassment of [ ] employees, if proven, is an unlawful practice for which [the employer] is liable under section 12940, subdivision (j). And subdivision (h) makes it an unlawful practice for [the employer] to retaliate against 'any person' for opposing that harassment.").

An employee who is not a member of a protected class may still be eligible for FEHA protections against harassment in limited scenarios. *Thompson* considered the claims of a white plaintiff who complained about conduct targeting his black colleague. The California Court of Appeal reasoned that even though Thompson himself was a member of the protected class, his association with and advocacy on behalf of that class could still entitle him to FEHA protections. *Thompson*, 186 Cal. App. 4th at 876. In order to qualify, however, Thompson was required to "produce[] evidence that he was personally subjected to unwelcome racial comments as a result of his association with or advocacy for protected employees." *Id.* at 877 (citation omitted). Only then would he meet the second and third requirements (that he was subjected to unwelcome racial harassment and the harassment was based on race) of a prima facie claim of harassment.

Here, Smahi never alleges that he himself was subject to unwelcome comments about his age or disability *because of* his association with a protected class of employees. Instead, the evidence shows that while he may have been the victim of retaliation, the comments and behavior by Allalcha, Pedrazzini, and Agius were not rooted in Smahi's membership in or perceived association with a protected class. Because Smahi cannot demonstrate harassment as a matter of law, all defendants are entitled to summary judgment on this claim.

**D. Assault and Battery (Count VII)**

California's Workers' Compensation Act generally provides the exclusive remedy for injuries arising out of the course of employment. Cal. Lab. Code § 3600(a); *see also Fermino v. Fedco, Inc.*, 872 P.2d 559, 561 (1994). An employee may bring suit, however, if the injury "is proximately caused by a willful and unprovoked physical act of aggression" by another. Cal. Lab. Code § 3601(a)(1).

Smahi bases his assault claim on Agius's alleged assault and battery on two occasions in October 2022. The first occurred during a work conference in Italy when, "in an unprovoked and in a hostile and angry manner," Agius "began yelling at [Smahi]," grabbed him, and violently shook him so that Smahi was concerned Agius would hit him. The second assault occurred later that month, when Agius approach Smahi at his cubicle and in the same manner, yelled at Smahi, grabbed him, and violently shook him. During both, Agius told Smahi that he hated him.

In *Torres v. Parkhouse Tire Serv., Inc.*, 30 P.3d 57 (Cal. 2001), the California Supreme Court drew a line between common "[f]lare-ups, frustrations, and disagreements" common to workplaces, and "something more." *Id.* at 64. That something more, which separates mere "horseplay" from "willful aggression," may be established with a showing of intent to injure. *Id.* at 63–65. *Torres* applied that standard to find that an employee's act of grabbing another employee's back support belt, lifting him off the ground several times, and finally dropping him on his knees was not sufficient to support a finding of intent to injure. In *Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 974 (E.D. Cal. 2016), the district court applied *Torres* to find that a "single push or shove by [an employee] to Robles's shoulders, while [the employee] was trying to terminate Roble," did not evince an intent to injure.

ST relies on these cases to argue that the incidents between Agius and Smahi were "relatively minor flare ups." But the events before the Court are qualitatively different. Neither *Robles* nor *Torres* involved expressions of hatred towards the plaintiff. *But cf. Nijem v. U.S. Bancorp*, No. C 11-04042 CW, 2011 WL 5104474, at *4 (N.D. Cal. Oct. 26, 2011) (a defendant touching a plaintiff's back several times without his permission while making several offensive and discriminatory comments did not rise to the level of intent to injure). The physical conduct—where Smahi was shaken to the point of being afraid that Agius would hit him—is also qualitatively different.

Viewing the evidence in the light most favorable to Smahi, a reasonable jury could find an intent to injure. Accordingly, ST's request for summary judgment on Smahi's assault and battery claims is denied.

## II. Agius's Motion for Summary Judgment

Defendant Frankie Agius is sued in his individual capacity for harassment and assault and battery. Agius now separately moves for summary judgment on both claims. Because the undisputed facts establish that Smahi cannot, as a matter of law, prevail on his harassment claim, Agius is also entitled to summary judgment on that claim. With respect to Smahi's assault and battery claims, Agius makes the same non-meritorious arguments as ST and further argues that plaintiff's failure to report the incidents to the police show that no reasonable person would have found these incidents either threatening or harmful. But Agius is reading a requirement into civil assault and battery claims that does not exist.

Agius next argues that the "interactions" were mischaracterized, as he merely "placed a hand on Plaintiff's shoulders and used the word 'Habibi.'" "These contentions obviously rest on disputed issues of fact that are entirely inappropriate for resolution by summary judgment." *Delta Sys., Inc. v. TRW*, 874 F.2d 815 (9th Cir. 1989). Accordingly, Agius's motion for summary judgment on the assault and battery causes of action is denied.

## III. Sanctions

Federal Rule of Civil Procedure 37(e) applies to discovery issues regarding spoliation of electronically stored information. *See Gregory v. Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024). A party engages in sanctionable misconduct triggering Rule 37(e) when it (1) "fail[s] to take reasonable steps to preserve" electronically stored information that (2) "should have been preserved in anticipation or conduct of litigation," and (3) when such information "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Once a court is satisfied that a party has engaged in such misconduct, it conducts a two-tiered analysis to determine the appropriate sanction. The most severe sanctions—adverse inferences and terminating sanctions—are available only if the court finds "that the party acted with the intent to deprive another party of the [lost] information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Lesser sanctions are available if the court "find[s] prejudice to another party from loss of the information," and those sanctions must be "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

The Court previously granted ST's motion for sanctions. *Smahi v. STMicroelectronics,*

*Inc.*, 825 F. Supp. 3d 1143 (N.D. Cal. 2026). In that motion, ST sought terminating sanctions, which are more severe than other sanctions and thus more difficult to prove. Terminating sanctions require a Court to find that a party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Intent "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). Because determining whether Smahi intended to destroy the evidence turned on the credibility of his testimony, *Lambright v. Ryan*, 698 F.3d 808, 825–26 (9th Cir. 2012), the Court held an evidentiary hearing on May 5, 2026, Dkt. 175. At the hearing, the Court heard testimony from Smahi, who was cross-examined by ST. After fully considering the testimony of the witness, the Court determines that Smahi's testimony as to the reasons for his spoliation of the evidence at issue is not credible.

**A. Credibility and Intent**

ST points to Smahi's deposition and errata as purportedly demonstrating shifting explanations and proof of bad faith, and requests that the Court make an inference of intent on that basis. Smahi, on the other hand, testified that he was not aware that the evidence was relevant and that his reasons for destruction were entirely unrelated to the litigation.

On August 16, 2024, ST sent Smahi a letter informing him that it was aware that he retained confidential documents and requested forensic imaging of his devices and email addresses so it could "evaluate the scope of his improper retention." While Smahi ultimately did provide his devices and accounts for such an examination, some of them had been significantly altered. He restored his iPhone, deleted an iCloud account associated with a Yahoo! email address, deleted an undisclosed Gmail account, and on September 30—the night before the agreed-upon forensic examination—wiped his iMac.

At the hearing, Smahi's explanations for his conduct were shifting and improbable. He claimed that he "erased [his] devices and restored them" in response to the August 16 letter. Smahi testified that he did so because he "understood" the letter to mean that "to rectify the issue," Smahi would need to "destroy any documents that [he] might have and then [ ] provide some kind of

United States District Court
Northern District of California

assurances or certification to show that [he] did so." He next testified that he wiped his iMac the night before the forensic review after receiving an email about a "suspicious attempt to sign in" to his Google drive. The email was sent soon after Smahi had logged into his Google drive from his phone for the first time. In response to ST's questioning, he responded that he "was not aware of how a Google drive works with a Gmail account." He separately claimed that he wiped all of his devices because he had accidentally clicked a link in a scam email which then "compromised" "all" of his passwords. He did not, however, download any software by clicking that link. When asked why he thought he needed to wipe his devices instead of changing his passwords, Smahi responded, "Scammers are getting too smart." Finally, Smahi revealed during the hearing that he had wiped his iMac at least two additional times between receiving the August 16th letter and the October 1st forensic review. After considering Smahi's testimony, his demeanor while testifying, and the extent to which his testimony is contradicted by other evidence, the Court finds that he is not a credible witness as to the issue of spoliation. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984) ("When the testimony of a witness is not believed, the trier of fact may simply disregard it. Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion.").

"Because courts are unable to ascertain precisely what was in a person's head at the time spoliation occurred, they must look to circumstantial evidence to determine intent." *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KS), 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020). A court may look to, among other things, the timing of the destruction and the degree of volition behind the destruction. *Id.* Here, Smahi deliberately wiped his devices and deleted his iCloud and Gmail accounts in response to notice that those devices and accounts would be subject to a forensic exam. One of the device resets occurred the night before the forensic exam was set to begin. Based on this pattern of conduct and Smahi's non-credibility, the Court finds that Smahi acted with the intent to deprive defendants of the use of the ESI at issue in this litigation.

**B. Adverse Inference Sanctions**

The Court has wide discretion in imposing sanctions. *Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1397 (9th Cir. 1993). Appropriate sanctions "should be commensurate to the spoliating

party's motive or degree of fault in destroying the evidence." *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012) (citation omitted). A court considering sanctions generally weighs three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Id.* The most serious sanctions are terminating sanctions, while lesser options include adverse inference sanctions, "barring of certain evidence, monetary sanctions, or warnings that a case may dismissed for failure to comply with further court orders." *Cervantes v. Elsen*, No. 23-CV-00811-NW, 2026 WL 901239, at *2 (N.D. Cal. Apr. 2, 2026).

Because the Court has determined that Smahi intended to deprive defendants of the use of ESI, the Court concludes that adverse inference sanctions are appropriate.

> The adverse inference is based on two rationales, one evidentiary and one not. The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document....
>
> The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.

*Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (citing *Nation-Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 218 (1st Cir. 1982)).

ST argues that Smahi's spoliation affected its ability to pursue both its defense of Smahi's claims and its own counterclaims. But ST has not demonstrated any measurable prejudice as to its defense. Smahi was employed by ST, and ST likely has its own copies of whatever work emails Smahi received. Its counterclaims, however, are different. One of Smahi's accounts—the Yahoo iCloud account—contained a backup of the wiped iPhone. Smahi testified that his computer was "back[ed] up" to his iCloud account but was unable to testify as to how frequent the backups were. Smahi testified that he copied the emails in question from his Outlook account onto his computer and then transferred them all to his lawyer. But as ST points out, it is difficult to tell if Smahi is

United States District Court
Northern District of California

being truthful, as any record of what was downloaded onto his computer may be gone.

On this record, the Court concludes that ST was prejudiced in its ability to pursue its counterclaims but that ST has not made a showing of prejudice to sufficient to warrant terminating sanctions. The appropriate sanction under these circumstances is to provide jurors with an adverse inference instruction informing them that they may assume that the evidence that was destroyed would have been harmful to Smahi.[14]

**CONCLUSION**

For the foregoing reasons, the ST defendants' motion for summary judgment is granted as to Counts III, IV, V, VIII, X, XI, XIII, and XIV and otherwise denied. Agius's motion for summary judgment is granted as to Count V and denied as to Count VII. ST's motion for sanctions is granted in part.

**IT IS SO ORDERED.**

Dated: September 8, 2026

P. Casey Pitts
United States District Judge

[14] Given the significant adverse inference sanctions, the Court declines to impose additional monetary sanctions. *See Pham v. Talkdesk, Inc.*, No. 2:22-CV-05325-MCS-JPR, 2023 WL 5667563, at *6 (C.D. Cal. July 11, 2023), *aff'd*, No. 23-55711, 2024 WL 4532896 (9th Cir. Oct. 21, 2024).